No. 75,290

STATE OF KANSAS, *Appellee*, v. BENNIE L. PLUNKETT, JR.
*Appellant.*
934 P.2d 113

Opinion
filed March 14, 1997.

*Debra J. Wilson*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the brief for appellant.

*David Lowden*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: The primary issue in this criminal case relates to defendant Bennie L. Plunkett's Sixth Amendment right to self-representation. Did the district court err in refusing to let Plunkett represent himself? Plunkett's convictions for aggravated criminal sodomy and rape of two victims were reversed for judicial misconduct in *State v. Plunkett*, 257 Kan. 135, 891 P.2d 370 (1995). Plunkett was tried again and convicted of three counts of aggravated criminal sodomy, K.S.A. 21-3506(c)(i) (Ensley 1988), and two counts of rape, K.S.A. 21-3502 (Ensley 1988), in two separate cases consolidated for trial. He was sentenced concurrently within each case, the sentences for each case to be served consecutively, for a controlling term of 30 years to life. Our jurisdiction is under K.S.A. 22-3601(b)(1) (maximum life sentence imposed). We find no reversible error and affirm.

The additional issues are: (1) whether Plunkett's due process rights were violated by either the district court's refusal to give an instruction on rape that included the word "intentional," as urged by counsel, or in interrupting closing argument and telling counsel that criminal intent is not an element of the rape charge; (2) whether the evidence was sufficient to support Plunkett's convictions for aggravated criminal sodomy and rape of S.B.; and (3) whether the district court erred in refusing to allow the introduction of previously transcribed testimony of Fred Dixon as an unavailable witness.

## FACTS

Plunkett was charged with two counts of aggravated criminal sodomy and one count of rape against S.B., a 17-year-old female. While on bond, Plunkett was charged in a separate complaint with two counts of aggravated criminal sodomy and one count of rape

of C.D., a 20-year-old female. Plunkett was 29 years old at the time of the incidents and weighed approximately 240 pounds. Although Plunkett testified at his first trial, he chose not to testify at the second trial. He was convicted by a jury in the second trial of one count of aggravated criminal sodomy and one count of rape against S.B. and two counts of aggravated criminal sodomy and one count of rape against C.D.

S.B. testified that she first met Plunkett while she was working in a supermarket bakery department. Plunkett asked for her phone number, and she gave it to him. He called her that night, and they had a friendly conversation. A few days later, they met again as she was going into the store to work. She gave him a picture of herself and wrote an inscription on back. Plunkett kissed her. They agreed to meet for lunch at a restaurant near her high school. Plunkett did not show up. He called her, and they set another lunch date for October 29, 1992. Again, he did not show up. S.B. called Plunkett later that day. He said that he really wanted to see her in person to talk. S.B., who was living with her grandparents, told Plunkett she would meet him at a street corner. S.B. told her grandmother that she would be gone a few minutes to see a girlfriend. When Plunkett arrived at the corner in his car, S.B. got in. Plunkett pulled away. S.B. told Plunkett she thought they were just going to sit there and talk. Plunkett told her they were going around the block. When Plunkett drove on, S.B. said her grandmother was cooking her dinner and she was not supposed to be with him. Plunkett said they were going to a friend's house. Instead, they stopped at Plunkett's house. S.B. was scared, because she thought they were just going to talk. S.B. said she needed to go home. Plunkett told her in a "mean voice" she was not going anywhere. S.B.'s door would not open, and Plunkett got out and opened it. Plunkett led S.B. into the house with his hand gripping her arm. Plunkett locked the door after they were inside. S.B. had never been there before. She was frightened.

Plunkett attempted to kiss S.B. She put up her hand to block him. She did not want to be kissed by Plunkett. Plunkett jerked S.B.'s hand down. S.B. said she needed to go home. Plunkett would not take her home. He told her to "quit playing" and to get in the

bedroom. When Plunkett grabbed her arm, S.B. said sarcastically, "Where's the bedroom?" Plunkett took her arm and led her into the bedroom, telling her to take her clothes off. Plunkett's demeanor was mean and bossy. S.B. was afraid and did as she was told. She was frightened by Plunkett's size and his refusal to take her home. Plunkett was two or three times bigger than she was. S.B. did not know what Plunkett was going to do to her. She felt she had no choice but to go to the bedroom. S.B. does not know if she told Plunkett she was afraid. S.B. did not want to take off her clothes.

Plunkett told S.B. to get on the bed after she removed her clothes. Plunkett grabbed S.B.'s head, put his penis in her mouth, and jerked her head up and down. She was afraid and did not want to do it, but said nothing. Plunkett made S.B. say things like "hurt me," and "I want your dick." Plunkett made S.B. lean over the bed, and he attempted anal sex. Plunkett placed his penis in S.B.'s anus. S.B. was shaking and scared. It hurt her. Plunkett placed his mouth on S.B.'s vagina. Plunkett got on top of S.B. and tried to place his penis in her vagina. S.B. felt pain when Plunkett did this. She did not agree to any of it. Plunkett got up to answer the phone and then came back and told S.B. to get dressed. He said he would take her home and that he wanted to meet her grandparents. Plunkett drove S.B. to a corner near an elementary school, where she told him to drop her off. Plunkett asked S.B. if she was going to tell anyone, and she said no. She wanted to be out of the car and away from him. S.B. got out and ran home. Her grandmother was upset. S.B. told her what had happened. S.B.'s grandmother called S.B.'s mother, who called the police. S.B. was taken to Wesley Hospital for an examination, which revealed a 2-centimeter tear in the vaginal mucosa. No sperm was detected. S.B. testified she was a virgin before Plunkett's rape.

During cross-examination, S.B. recalled that when she and Plunkett were in the bedroom, she told him she had to go eat and he told her that she "couldn't go nowhere until he nuts."

Plunkett has not challenged the sufficiency of the evidence in C.D.'s case; thus, a recitation of the evidentiary facts is unnecessary. The factual circumstances in the two cases are similar.

## DISCUSSION

### Plunkett's Sixth Amendment Right to Self-Representation

Plunkett appeared on a Friday before District Judge Rebecca L. Pilshaw with his court-appointed counsel for hearing on pro se motions and several pretrial motions filed by his counsel. Trial was scheduled to commence on the following Monday. At the beginning of the hearing, Plunkett requested to represent himself at trial. After informing Plunkett of the risks of self-representation, Judge Pilshaw granted Plunkett's request, relying on the procedure recommended in Barbara, Kansas Criminal Law Handbook, pp. 11-10, 11-11 (3d ed. 1992) (quoted in *State v. Lowe*, 18 Kan. App. 2d 72, 76-77, 847 P.2d 1334 [1993]). Plunkett maintained a surly, disrespectful attitude throughout the proceeding. During argument on the motions, Plunkett became belligerent and used profanity. He refused to stand when addressing the court. Eventually, he simply refused to answer the judge's questions. Judge Pilshaw found Plunkett in contempt and terminated his self-representation, finding that his conduct was "obstructionist."

We summarized the law regarding self-representation in *State v. Collins*, 257 Kan. 408, 411-16, 893 P.2d 217 (1995). Collins' request for self-representation was made during trial. We affirmed the district court's denial of the request, applying an abuse of discretion standard of review:

"Although a defendant has a right to self-representation, that right is unqualified only if it is asserted before trial. If this right is asserted after trial commences, a decision to grant or deny self-representation lies within the sound discretion of the trial judge." 257 Kan. 408, Syl. ¶ 2.

We recognized the standard set in *Lowe*, 18 Kan. App. 2d 72, when there is a clear and unequivocal request by the accused for self-representation before trial. *Collins*, 257 Kan. at 414.

*Lowe* concerned a pretrial request for self-representation that was not granted. The Court of Appeals reversed Lowe's conviction and remanded for a new trial, deciding that although the trial court informed Lowe of the risks involved in self-representation, it failed to ask him whether he still wanted to proceed pro se and afford him the opportunity to make a choice. The Court of Appeals set

forth the proper procedure for the trial court to apply in determining whether a defendant has made a knowing and intelligent waiver of the right to counsel and a knowing and intelligent decision to proceed pro se. 18 Kan. App. 2d at 76-77.

Judge Pilshaw relied on Judge Barbara's third factor in terminating Plunkett's self-representation: "That the court may and will terminate self-representation if the defendant deliberately engages in serious and obstructionist misconduct before the court or in any proceeding." Barbara, Kansas Criminal Law Handbook, p. 11-10. That factor is referenced in *Faretta v. California*, 422 U.S. 806, 834 n.46, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975).

The *Faretta* footnote cites *Illinois v. Allen*, 397 U.S. 337, 25 L. Ed. 2d 353, 90 S. Ct. 1057 (1970). *Allen* concerned the Sixth Amendment right to be present during trial and considered the circumstances when a defendant's disruptive behavior during trial would justify removal from the courtroom, with the trial continuing in the defendant's absence. Plunkett argues that his behavior should be compared to Allen's.

*Allen* did not consider what conduct would justify ending a defendant's self-representation. Plunkett's conduct did not compel Judge Pilshaw to have him removed from the courtroom. However, conduct sufficient to cause a defendant's removal from the courtroom is not required to justify ending a defendant's self-representation.

Plunkett argues that his conduct would not have prevented the judge from ruling on the pretrial motions, so it should not justify ending his self-representation. Given Plunkett's refusal to respond to the judge's questions, to have continued with the pretrial motions would have been the same as proceeding without any representation. As the Court in *Allen* said: "We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case." 397 U.S. at 343.

Plunkett was granted his right to self-representation. His self-representation was ended after he refused to represent himself. We find no error.

### The Rape Instruction

The district judge refused to give a rape instruction that included the word "intentional," as urged by Plunkett's counsel. During closing argument, the judge interrupted Plunkett's counsel, informing her that criminal intent is not an element of the rape charge.

Plunkett claims to have objected to the PIK Crim. 3d 57.01 rape instruction used at trial. The record does not show that Plunkett's counsel maintained her objection. Although counsel questioned whether the word "intentional" should be included in the instruction in S.B.'s case, after Judge Pilshaw pointed out that the word was not included in the PIK rape instruction, counsel said that she had no objection to the instruction. The instruction issue was not advanced in Plunkett's motion for new trial. Plunkett's counsel raised no objection to the rape instruction in C.D.'s case.

In *State v. Whitaker*, 255 Kan. 118, Syl. ¶ 1, 872 P.2d 278 (1994), we endorsed the PIK instructions. Absent a specific objection to the instruction, we may reverse only if the instruction was clearly erroneous. K.S.A. 22-3414(3); *State v. McIntyre*, 259 Kan. 488, Syl. ¶¶ 1, 2, 912 P.2d 156 (1996).

The word "intentional" was deleted from the PIK rape instruction after the decision in *State v. Cantrell*, 234 Kan. 426, 434, 673 P.2d 1147 (1983), *cert. denied* 469 U.S. 817 (1984), which held: "Rape as defined in K.S.A. 21-3502 does not require as one of the statutory elements of the offense a specific intent on the part of the defendant to commit rape and therefore there is no necessity to instruct on such a specific intent." *State v. Lile*, 237 Kan. 210, 212-13, 699 P.2d 456 (1985), relying on *Cantrell*, upheld the constitutionality of the rape statute. See K.S.A. 21-3502, the current version of the rape statute, which likewise does not require a specific intent on the part of defendant to commit rape.

Plunkett argues that because general criminal intent is an element of rape, under K.S.A. 21-3201 (Ensley 1988), the general criminal intent statute, the State must prove that Plunkett intended to have nonconsensual intercourse. Plunkett's argument would add an additional element to the crime of rape not included in the statute. K.S.A. 21-3502 (Ensley 1988) does not require proof that

the defendant intended to have nonconsensual intercourse. The statute requires proof that the defendant had sexual intercourse without the victim's consent when the victim was overcome by force or fear.

PIK Crim. 3d 57.01 follows the language of the criminal statute almost verbatim. See K.S.A. 21-3502 (Ensley 1988). The word "intentionally" is not in the rape statute and, therefore, is properly not included in the pattern jury instruction. The district court did not err in omitting "intentionally" from the rape instruction.

Plunkett also raises as error the district court's failure to give the PIK Crim. 3d 54.01-A general criminal intent instruction. Although the record shows that Plunkett's counsel may have requested that the PIK Crim. 3d 54.01-A instruction be included, there is no clear objection from counsel to the failure to give that instruction. The district judge decided not to use PIK Crim. 3d 54.01-A. We set out the discussion regarding the general intent instruction:

"THE COURT: . . . The next is, In order to be guilty of a crime charged. Any objections? I need to look at this real quick. I want to make sure that this is a correct—correctly given in a general intent.

"Okay. I'm not giving this [PIK Crim. 3d 54.01-A]. Pull that out. And I'll cite PIK where it says that this instruction is not recommended for general use. The PIK instruction defining the crime should cover either specific or general criminal intent as an element of the crime. Well, wait a minute. The above instruction should not be given where intentional conduct is not a necessary element of the offense. So I'm not giving that instruction. The next one is, Ordinarily a person intends.

"MR. O'CONNOR [for the State]: No objection.

"MS. MARTIN [Plunkett's counsel]: No objection to that, Your Honor. We would ask just for the record that the instruction regarding intent be included in the packet. Probably that the aggravated criminal sodomy acts raise the issue of intentional, and this instruction gives—serves to give them an idea of what's required."

The "Notes on Use" accompanying PIK Crim. 3d 54.01-A state that the instruction is derived from K.S.A. 21-3201(a) and (b). The key sentence is: "This instruction should be used only where the crime requires only a general criminal intent and the state of mind of the defendant is a substantial issue in the case." Rape is a general criminal intent crime. *State v. Lile*, 237 Kan. at 213. However,

Plunkett's state of mind was not a substantial issue in this case. Plunkett's defense theory is that the victims consented. Thus, even under his own theory, Plunkett concedes that his sexual conduct was willful and purposeful and, thus, intentional. The remaining elements of the crime of rape concern the state of mind of the victim. Whether Plunkett thought his victim consented or was not fearful is irrelevant if the State proved that she did not consent and was overcome by fear.

The "Notes on Use" accompanying PIK Crim. 3d 57.01, the rape instruction, provide in part: "In addition, PIK 3d 57.02, Sexual Intercourse-Definition, *and PIK 3d 54.01-A, General Criminal Intent,* should be given." (Emphasis added.) We observe that in the 1997 Supplement to PIK Crim. 3d 57.01, the above italicized reference to 54.01-A is deleted. Because Plunkett's theory of defense conceded that his conduct was purposeful, failure to give the general criminal intent instruction was not error.

## Closing Argument Interruption

Plunkett asserts that the district judge erred in interrupting his counsel's closing argument. The judge told the jury that criminal intent is not an element of the rape charge and that counsel had misstated the law. Counsel voiced no contemporaneous objection to the judge's comment. In the motion for a new trial, counsel raised the interruption issue. Under K.S.A. 21-3201(1) (Ensley 1988), criminal intent is an essential element of every crime, except as otherwise provided. Judge Pilshaw's statement would have been correct had she said that *specific* criminal intent is not an element of the rape charge.

At several points during closing argument, Plunkett's counsel implied that the State would have to prove that Plunkett intended to have intercourse with his victims without their consent, *i.e.*, that the State had to prove specific criminal intent. Counsel's remarks misstated the law and could have misled the jury into believing that a specific criminal intent element should be added to the crime of rape. Counsel used the term "criminal intent" to mean "specific criminal intent." Judge Pilshaw responded in kind. We view Judge Pilshaw's failure to use "specific criminal intent" as invited error.

"A litigant may not invite and lead a trial court into error and then complain of the trial court's action on appeal." *State v. Prouse*, 244 Kan. 292, 298-99, 767 P.2d 1308 (1989). In addition, Judge Pilshaw referred the jury to the instructions for guidance as to the intent element. We find no error in the interruption of closing argument.

Plunkett relies on *State v. Castoreno*, 255 Kan. 401, 874 P.2d 1173 (1994), in which we reversed a conviction for aggravated criminal sodomy, in part, because the district court failed to instruct the jury on the statutory element of lack of consent. K.S.A. 21-3506(c)(i) (Ensley 1988). Plunkett's reliance on *Castoreno* is misplaced. Judge Pilshaw properly instructed the jurors in this case on the lack of consent element for both rape and aggravated criminal sodomy.

### S.B.'s Case—Sufficiency of the Evidence

The standard of review for a challenge to the sufficiency of the evidence in a criminal case is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Coffman*, 260 Kan. 811, Syl. ¶ 3, 925 P.2d 419 (1996).

The testimony of the prosecutrix alone can be sufficient to sustain a rape conviction without further corroboration if the evidence is clear and convincing and is not so incredible and improbable as to defy belief. *State v. Borthwick*, 255 Kan. 899, Syl. ¶ 2, 880 P.2d 1261 (1994).

Plunkett contends that the testimony of S.B. did not establish that he had the necessary criminal intent for rape or aggravated criminal sodomy. Plunkett argues that there was no evidence of criminal intent because there was no evidence that he knew his sexual activity was nonconsensual. The statutory elements show that aggravated criminal sodomy, like rape, is a general criminal intent crime. K.S.A. 21-3506(c)(i) (Ensley 1988). Plunkett's argument that there was insufficient evidence to show that he knew his sexual activity was nonconsensual is irrelevant. See *Borthwick*, 255 Kan. at 914.

The dissent in *Borthwick* disagreed with the conclusion that the evidence was sufficient to establish that the victim was overcome by force or fear. 255 Kan. at 926. The dissent did not consider, or even mention, the defendant's state of mind. Plunkett's reliance on the *Borthwick* dissent is misplaced.

S.B.'s testimony sufficiently established all the elements of rape and aggravated criminal sodomy. Plunkett's conduct was purposeful. S.B. did not need to tell Plunkett she did not consent or that she was afraid each time he violated her. *Borthwick*, 255 Kan. at 914. She told Plunkett she wanted to go home many times before and during Plunkett's sexual assaults. The evidence was sufficient to show that S.B. did not consent and was overcome with fear.

### Exclusion of Previously Transcribed Testimony

Fred Dixon rode in Plunkett's car when Plunkett picked up C.D. and drove her to his house. Dixon came back to the house after Plunkett committed his sex crimes against C.D. and rode in the car with C.D. and Plunkett when Plunkett took C.D. to Mc-Donald's, where she worked. Dixon testified as a defense witness at the first trial in C.D.'s case, but did not testify at the second trial. After the State rested, Plunkett moved to admit the transcript of Dixon's testimony, contending Dixon was not available. K.S.A. 60-459(g) defines unavailable witness as "absent from the place of hearing because the proponent of his or her statement does not know and with diligence has been unable to ascertain his or her whereabouts." Before Dixon could be declared unavailable and before Plunkett could use the prior testimony of Dixon, Plunkett was required to show that Dixon could not be produced at trial by the exercise of due diligence and good faith. *State v. Cook*, 259 Kan. 370, Syl. ¶¶ 1, 2, 913 P.2d 97 (1996).

The public defender's investigator testified that he was unable to locate Dixon at Dixon's last known address in Sedgwick County. The investigator also checked the water department, jail, and court records. He found a telephone listing for Dixon near Minneapolis, Minnesota, but when he called that number, Dixon did not reside there. The district court denied the motion, reasoning that the defense's efforts to locate Dixon were inadequate. Plunkett then

gave his counsel two telephone numbers for Dixon's mother in Minnesota. The district court allowed the defense to follow up on these numbers, but the next day, when the defense had not yet contacted Dixon's mother, the district court reaffirmed its ruling.

Although Dixon testified at the first trial, apparently no contact was maintained with him afterward. The public defender's investigator conducted a fruitless search in Wichita for Dixon. Although Plunkett had Dixon's mother's phone number, he did not give this information to his counsel until it was time to present his defense at trial. The defense was given a day to follow up. The defense had the best source of information as to Dixon's location but failed to pursue it. There was no abuse of discretion in denying admission of the transcript of Dixon's testimony. See *State v. Vaughn*, 254 Kan. 191, Syl. ¶¶ 3, 4, 865 P.2d 207 (1993). See also *State v. Bey*, 217 Kan. 251, 255-56, 535 P.2d 881 (1975) (witness had indicated willingness to testify; State had contacted friends and relatives; due diligence shown); *State v. Kirk*, 211 Kan. 165, 167-71, 505 P.2d 619 (1973) (State did not attempt to look for witness until day of trial; subpoena mailed 3 days before trial; no due diligence).

Affirmed.

ABBOTT, J., concurring: I would affirm the convictions because the trial judge's failure to give the general criminal intent instruction and the judge's erroneous comments only amount to harmless error in this case. I am concerned about two parts of the majority opinion, and I am also concerned about one issue that is not raised by the parties; hence, it is not before the court, but is an area which the bench and bar needs to give juries guidance on.

In discussing the trial court's interruption of the defendant's counsel regarding the defendant's intent, the majority included the sentence "Counsel voiced no contemporaneous objection to the judge's comment." We ordinarily do not review claimed error where a contemporaneous objection is not made. I do not believe counsel is, or should be, required to object on the record to a trial judge interrupting counsel in closing argument and misleading the jury.

My second concern is the majority's holding that the trial judge's erroneous comments to the jury were invited error. The comments simply were not invited error. However, I agree that, under the circumstances, the erroneous comments did not create reversible error.

Finally, my real concern in this case is the issue that is not before us. The issue is intertwined with the criminal intent problem. This court has clarified that force and fear in a rape case are measured from the victim's viewpoint. As I see it, we need to give the jury a standard to determine if the victim is overcome by "force or fear." The jury should have been instructed in this case that the victim's fear must be genuine and reasonable under the circumstances. In some cases, a victim's fear could be unreasonable under the circumstances and the defendant could still be convicted if the defendant knew the victim was subject to fear that was unreasonable and took advantage of it.

By not giving the jury some sort of standard, we invite appeals that frequently have no merit.

ALLEGRUCCI, J., joins in the foregoing concurring opinion.