NOT DESIGNATED FOR PUBLICATION

No. 116,439

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JASON LEE HILL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; MERLIN G. WHEELER, judge. Opinion filed September 22, 2017. Affirmed.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Laura L. Miser*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., PIERRON and BRUNS, JJ.

PER CURIAM: Jason Lee Hill appeals from his conviction for distribution of methamphetamine in violation of K.S.A. 2016 Supp. 21-5705(a)(1) and (d)(3)(B). Although Hill was also convicted of possession of methamphetamine, felony possession of drug paraphernalia, and misdemeanor possession of drug paraphernalia, he does not appeal from those convictions. On appeal, Hill contends that the State presented insufficient evidence at trial to support the distribution conviction. Specifically, he argues the State failed to offer evidence of the margins of error for measurements of the methamphetamine he was convicted of distributing. Moreover, he argues that the

1

testimony of the informant who assisted law enforcement with the drug buy was uncorroborated. We find neither of these arguments to be persuasive. Thus, we affirm Hill's distribution of methamphetamine conviction.

## FACTS

Jessica Knoll offered to assist the Lyon County Sheriff's Department to "work off some of [pending] charges." Specifically, Knoll told Deputy Heath Samuels that she could purchase methamphetamine from a person called "Gator." Deputy Samuels knew that Hill went by the nickname of "Gator." As such, Deputy Samuels arranged for Knoll to make a controlled purchase of methamphetamine from Hill.

The controlled drug purchase occurred on December 17, 2015. Before allowing her to meet with Hill, Lyon County deputies searched Knoll and her car. In doing so, the deputies found nothing illegal in her possession. The deputies then provided Knoll with $200 in "prerecorded" cash to use to make the drug purchase. Although the deputies also equipped Knoll with a recording device, it did not work. However, she was able to use her cell phone to remain in contact with Deputy Samuels during the controlled buy.

The deputies followed Knoll and saw her enter Hill's apartment. When Knoll arrived at the apartment, Hill indicated he did not have the methamphetamine in his possession but that someone would deliver it. Accordingly, Knoll texted Deputy Samuels that someone was delivering the drugs "on foot." As Knoll waited, a man—who police later identified as Anthony Goff—entered the apartment. After Goff arrived, Hill gave Knoll the methamphetamine and she threw the money she received from the deputies on the bed. After leaving Hill's apartment, Knoll gave the deputies the methamphetamine she had purchased.

2

Deputy Samuels subsequently applied for and received a search warrant for Hill's apartment. Prior to the execution of the search warrant, deputies saw Goff and another individual leave Hill's apartment. The deputies were able to apprehend Goff and found $40 in bills from the $200 they had given to Knoll to make the controlled drug purchase. The deputies never found the remaining money.

In executing the search warrant on Hill's apartment, deputies found multiple drug-related items, including (1) digital scales, (2) plastic baggies, (3) a straw lined with suspected methamphetamine residue, and (4) a baggie with suspected methamphetamine residue. The Kansas Bureau of Investigation (KBI) Forensic Science Center later tested both the suspected methamphetamine purchased by Knoll during the controlled buy and the evidence seized from Hill's apartment during the execution of the search warrant. The material Knoll purchased from Hill, the substance in the straw seized from Hill's apartment, and the residue in the baggie found in Hill's apartment each tested positive for methamphetamine. Moreover, the KBI determined that Knoll had purchased 1.02 grams of methamphetamine.

On December 22, 2015, the State charged Hill with one count of distribution of methamphetamine, 1-3.5 grams, in violation of K.S.A. 2016 Supp. 21-5705(a)(1) and (d)(3)(B), a drug severity level 3 felony. The State later filed an amended complaint that added charges of felony possession of methamphetamine, in violation of K.S.A. 2016 Supp. 21-5706(a); felony possession of drug paraphernalia, in violation of K.S.A. 2016 Supp. 21-5709(b)(1); and misdemeanor possession of drug paraphernalia, in violation of K.S.A. 2016 Supp. 21-5709(b)(2). The district court bound Hill over for trial on all of the charges.

A two-day jury trial commenced on May 23, 2016. At trial, the State presented the testimony of six witnesses. Knoll testified about the controlled drug purchase from Hill. Although she struggled to remember specific details, Knoll identified Hill as the person

she knew as "Gator" and from whom she had purchased the methamphetamine. Deputy Samuels testified that Knoll offered to assist law enforcement with the controlled purchase. He also testified regarding his investigation of Hill as well as the controlled drug purchase. In addition, the State presented the testimony of Deputies Catherine Ohlemeier and Dominick Vortherms. The testimony of both deputies was substantially similar to that of Deputy Samuels and Knoll regarding the events surrounding the controlled drug purchase.

The State also offered the testimony of two forensic scientists who worked at the KBI Forensic Science Center. One of the KBI scientists testified extensively on the process used to measure the weight of substances collected during a criminal investigation. She specifically testified that the substance Knoll received during the controlled drug buy was methamphetamine and that the total weight of the specimens tested was 1.02 grams. She did not testify regarding the margin of error in her testing equipment nor did she indicate any uncertainty in her measurement. The other KBI scientist testified regarding the methamphetamine found on the straw and baggie seized in Hill's apartment.

Ultimately, the jury convicted Hill on all counts. A few weeks after the trial, Hill filed a motion for departure. On July 6, 2016, the district court denied Hill's motion and sentenced him to 73 months of prison time followed by 36 months of postrelease supervision. Thereafter, Hill timely filed this appeal.

ANALYSIS

*Issues Presented and Standard of Review*

On appeal, Hill contends that the State failed to present sufficient evidence against him at trial to establish his guilt beyond a reasonable doubt on the charge of distribution

4

of methamphetamine. First, Hill argues that the State was required to present "margin of error" or uncertainty evidence relating to the scales used and the measurements done by the KBI Forensic Science Center in determining that the methamphetamine purchased during the controlled drug purchase was more than 1.0 grams. Second, Hill argues that the State failed to present reliable evidence to support its contention that he distributed methamphetamine to Knoll.

When a defendant challenges the sufficiency of the evidence supporting his or her conviction, we are to review the evidence in the light most favorable to the State. Likewise, we are to uphold a conviction if we are convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on the evidence presented at trial. *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015). In making this determination, we are not to reweigh the evidence or assess the credibility of witnesses. *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016). Hence, we will only reverse a guilty verdict in the exceptional case where the testimony is so incredible that no reasonable factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

*Sufficiency of Evidence Relating to Weight*

Hill argues that there was insufficient evidence presented at trial to prove that he distributed at least 1.0 gram of methamphetamine. Specifically, Hill argues the State failed to introduce evidence about the margin of error or uncertainty in the weight measurements made by the KBI Forensics Science Center of the methamphetamine purchased during the controlled buy. Hill further argues that jurors are incapable of making a determination of weights as small as 1.0 gram.

In reviewing the evidence in the light most favorable to the State, as we are required to do, we find that the record contains sufficient evidence upon which a

5

reasonable finder of fact could conclude beyond a reasonable doubt that the methamphetamine purchased during the controlled buy weighed 1.0 grams or more in violation of K.S.A. 2016 Supp. 21-5705(a)(1) and (d)(3)(B). At trial, a forensic scientist who works in the chemistry section of the KBI Forensic Science Center testified under oath about the weight measurements she performed on the methamphetamine. In particular, she testified regarding her training—including a degree in chemistry and geology—and experience—including working for the KBI for more than 25 years. In her time with the KBI, the scientist has completed over 50,000 tests of various substances including drugs. She testified that she performed a net weight measurement on each of the pieces of the crystalline substance provided to her by the Lyon County Sheriff's Department. Individually, the substances weighed .45 grams, .18 grams, .19 grams, and .20 grams for a combined weight of 1.02 grams of methamphetamine.

The Kansas Supreme Court has addressed margin of error or uncertainty in the context of a driving under the influence of alcohol conviction. *State v. Finch*, 291 Kan. 665, 244 P.3d 673 (2011). In *Finch*, our Supreme Court reversed a judgment of acquittal granted by the district court. In doing so, the court noted that the legislature had not required consideration of margin of error or uncertainty in the DUI statute. Rather than adding such a consideration to the DUI statute, our Supreme Court found that it was up to a defendant to attack the measurement—including attacks involving the margin of error or uncertainty. Specifically, our Supreme Court labeled margin of error as "simply a factor among many possibilities for the fact-finder to consider." *Finch*, 291 Kan. at 673.

Although *Finch* was a DUI case, we find its reasoning to be persuasive in the present case involving the distribution of methamphetamine. When a statute is plain and unambiguous, we are not to speculate about the legislative intent, and we are to refrain from reading something into a statute that is not readily found in its words. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016). Similar to the DUI statute, the legislature did not require the consideration for margin of error or uncertainty within the

6

plain language K.S.A. 2016 Supp. 21-5705(d)(3)(B). Moreover, we do not find it to be appropriate for us to read such a requirement into the statute. Instead, we conclude that it is up to a defendant, as a matter of trial strategy, to decide whether to attack the measurement by eliciting evidence of the margin of error or uncertainty.

Although Hill cites to *United States v. Spirk*, 503 F.3d 619, 622-23 (7th Cir. 2007) and *State v. Spear*, 297 Kan. 780, 791, 304 P.3d 1246 (2013) in support of his argument, we find neither case to be applicable here. In both cases, the jury was left to speculate regarding a necessary element of a crime because there was no evidence beyond the "guess" of a witness. In this case, however, the State did present evidence from a qualified forensic scientist about the weight of the methamphetamine purchased in the controlled drug buy and regarding the procedures that the scientist followed in weighing the evidence. Thus, it was up to the jury to determine whether to believe that testimony of the KBI forensic scientist regarding the weight of the methamphetamine, and it is not our role to replace the judgment of the finders of fact with that of our own.

*Sufficiency of Evidence Relating to Distribution*

Hill further argues that the State did not present sufficient evidence at trial to establish beyond a reasonable doubt that he distributed methamphetamine to Knoll. In particular, Hill suggests that Knoll was motivated to lie and that no other witness corroborated her testimony. In response, the State argues that Hill is asking us to reweigh the evidence and to assess the credibility of the witnesses.

Once again, in reviewing the evidence in the light most favorable to the State, we find that the record contains sufficient evidence upon which a reasonable finder of fact could conclude beyond a reasonable doubt that Hill is guilty of distribution of methamphetamine. In fact, the testimony of Knoll is sufficient—in itself—to establish that Hill sold methamphetamine to her during the controlled drug purchase. As the

7

Kansas Supreme Court has found, uncorroborated testimony is sufficient to sustain a conviction if it is not so incredible and improbable as to defy belief. See *State v. Brinklow*, 288 Kan. 39, 53, 200 P.3d 1225 (2009) (citing *State v. Plunkett*, 261 Kan. 1024, 1033, 934 P.2d 113 [1997]).

Although Hill acknowledges the holding in *Brinklow*, he cites us to *State v. Matlock* in support of his argument. However, as our Supreme Court noted in its more recent *Brinklow* opinion, *Matlock* "is perhaps the only case of its kind in this state where [it] directly weighed the evidence and assessed the credibility of the prosecutrix to reverse a conviction for rape." *Brinklow*, 288 Kan. 53. In fact, our Supreme Court went on to call the review of the facts performed in *Matlock* to be "aberrant" as compared to the normal standard of review for sufficiency of the evidence. *Brinklow*, 288 Kan. at 53-54.

We see no reason to apply *Matlock* to the present case. Rather, we find that it was appropriate for the jury to determine Knoll's credibility and to weigh her testimony against the other evidence presented at trial. Moreover, we note that other evidence corroborated much of Knoll's testimony, including the testimony of Deputy Samuels, the testimony of Deputy Ohlemeier, and the testimony of Deputy Vortherms. Likewise, the physical evidence seized from Hill's apartment—including digital scales, a straw lined with methamphetamine residue, and a baggie with methamphetamine residue—also corroborated much of Knoll's testimony.

We, therefore, conclude that the evidence presented by the State at trial was sufficient to support a conclusion beyond a reasonable doubt that Hill is guilty of distributing methamphetamine in violation of K.S.A. 2016 Supp. 21-5705(a)(1) and (d)(3)(B).

Affirmed.