NOT DESIGNATED FOR PUBLICATION

No. 119,240

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DYLAN MONTELL THOMAS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; MICHAEL A. RUSSELL, judge. Opinion filed August 23, 2019. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Lois Malin*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., STANDRIDGE, J., and MCANANY, S.J.

PER CURIAM: Dylan Montell Thomas appeals his convictions of rape, criminal threat, sexual battery, and battery. He contends the district court erred in consolidating for trial two separate cases: one involved the rape and criminal threat charges, the other involved the sexual battery and battery charges.

*Factual and Procedural History*

Thomas was charged in the first case with rape, aggravated sodomy, aggravated burglary, and criminal threat. The charges arose out of an incident in which Thomas

reportedly forced his way into the victim's apartment and took her to her bedroom where he raped her. As he left, he told the victim he would kill both her and her son if she told anyone what happened. According to the victim, she had never seen this man before.

In a separate incident which led to charges in the second case of sexual battery and simple battery, Thomas was arrested after he allegedly pinched a woman (the second victim) on her derriere while riding on a bus. The woman struck Thomas and Thomas responded by striking her in the face. The woman left the bus and Thomas followed until the woman ran into a store, called the police, and had Thomas arrested.

After Thomas' arrest for the bus incident, a detective saw Thomas at the police station and thought Thomas fit the description the first victim gave the detective about her alleged rapist. In a photo array the victim identified Thomas as her assailant.

Before Thomas' trial on the rape charge the State moved to consolidate both cases for trial. The judge granted the motion, finding the cases were of same or similar character and had a common scheme or plan.

At trial, Thomas did not dispute that he had sexual intercourse with the first victim, but rather he contended that the encounter was consensual. The victim testified about the facts surrounding the rape and criminal threat charges and reiterated that she had never seen her assailant before this incident. A sexual assault nurse examiner testified about the victim's complaints of tenderness around her neck and the victim's swollen lip and abrasions on her arms, which she observed at the hospital following this incident. She testified that the victim was in a lot of pain during the sexual assault exam and could not tolerate a vaginal exam. Evidence was presented that the defendant's DNA was found on facial and vaginal swabs from the victim.

2

In his defense Thomas sought to call his mother to testify that she and Thomas met the alleged rape victim at a bus stop in the distant past and that the woman came to the mother's house the next day where she made unsuccessful sexual advances towards Thomas. Thomas intended to offer his mother's testimony to impeach the victim's statement that she had never seen Thomas before. The State conceded that Thomas' mother could testify "whether or not [the victim] knew [Thomas], how well she knew him, if [the victim] lied under oath at prelim—those questions were fair game . . . because they went to impeachment." But, according to the State, the evidence of the victim's prior sexual advances was improper because it was too remote in time and violated the rape shield law. The district court sustained the State's objection, finding that the testimony about the victim's past sexual advances fell under the protections of the rape shield statute, and Thomas had failed to follow the procedural requirements for an exception under the rape shield statute. The court concluded, "I'm not going to let her testify as to that previous conduct. Now, if she has something else to offer, that's fine." At that point, Thomas chose not to call his mother to testify.

Thomas then testified that he was schizophrenic and bipolar and that his sexual encounter with the victim was consensual. According to Thomas, the victim called him and told him to come over to her house because she needed money. When Thomas arrived he gave her $100, and they had consensual sex over the course of the day. When the victim asked for another $100, Thomas refused and left.

With regard to the second victim, Thomas testified that he knew her from riding on the same bus with her. He tried to date her and gave her a cell phone so that he could contact her. She rebuffed Thomas' efforts, and when he touched her he was not "trying to grope on her butt" but was trying to check her pockets for the phone he had given her in an attempt to retrieve it.

3

The district court instructed the jury that with regard to the rape charge the State had to prove that Thomas knowingly engaged in sexual intercourse with the victim and that it was not a defense that Thomas thought the sexual intercourse between him and the victim was consensual. Because the case involved multiple charges, the district court instructed the jury that "[e]ach crime charged against [Thomas] is a separate and distinct offense. You must decide each charge separately on the evidence and law applicable to it, uninfluenced by your decision as to any other charge."

The jury found Thomas guilty of rape and criminal threat and not guilty of aggravated burglary and aggravated sodomy. Regarding the incident on the bus, the jury found Thomas guilty of both sexual battery and simple battery.

In the rape case the court sentenced Thomas to 620 months' imprisonment followed by lifetime postrelease supervision. Thomas' appeal brings the matter to us.

*Consolidation of Cases for Trial*

Thomas' first issue is with the consolidation of these two cases for trial. He contends the district court erred in doing so.

Under K.S.A. 22-3202, the district court may consolidate for trial two or more complaints against a single defendant if the crimes could have been joined in a single complaint, information, or indictment; i.e., if the charges are (1) of "the same or similar character," (2) are part of the "same act or transaction," or (3) result from "two or more acts or transactions connected together or constituting parts of a common scheme or plan." Here, the district court determined the offenses charged against Thomas were (1) "of the same or similar character" and (3) that Thomas' actions "constitute[d] a common scheme or plan."

4

Our review standard is set forth in *State v. Hurd*, 298 Kan. 555, Syl. ¶ 1, 316 P.3d 696 (2013):

> "First, the court considers whether K.S.A. 22-3203 permitted consolidation. Under that statute, multiple complaints against a defendant can be tried together if the State could have brought the charges in a single complaint. K.S.A. 22-3202(1) spells out the three conditions permitting the joining of multiple crimes in a single complaint. Whether one of the conditions is satisfied is a fact-specific inquiry, and the appellate court reviews the district court's factual findings for substantial competent evidence and the legal conclusion that one of the conditions is met de novo. . . . Finally, if an error occurred in the preceding steps, the appellate court considers whether the error resulted in prejudice, *i.e.*, whether the error affected a party's substantial rights."

Thomas has the burden to establish a clear abuse of discretion in the district court's decision to consolidate these cases for trial. See *State v. Carr*, 300 Kan. 1, 94, 331 P.3d 544 (2014), *rev'd and remanded on other grounds* 577 U.S. ___, 136 S. Ct. 633, 193 L. Ed. 2d 535 (2016). Our Supreme Court has stated that it is rare for appellate courts to overturn a district court's decision related to joinder. See *State v. Bunyard*, 281 Kan. 392, 398, 133 P.3d 14 (2006), *disapproved of on other grounds by State v. Flynn*, 299 Kan. 1052, 329 P.3d 429 (2014). There, the court noted that "research has disclosed only one case where we have reversed a conviction after a trial court denied severance." *Bunyard*, 281 Kan. at 398. That case was *State v. Thomas*, 206 Kan. 603, 481 P.2d 964 (1971). "In our case law prior to *Thomas*, and the 30-plus years since *Thomas*, numerous claims of abuse of judicial discretion relative to joinder or denial of severance have been before Kansas appellate courts. None [has] been successful." *Bunyard*, 281 Kan. at 398.

The State argued that consolidation was proper because the cases involved the same criminal motivation, Thomas committed the crimes in a similar matter, and the arrest of Thomas in the bus incident case assisted in solving the case involving the

5

charged rape. The State also moved to admit the evidence of the sexual battery of the first victim as propensity evidence at the trial involving the second victim.

The district court held a hearing on the State's motions and granted the State's motion to consolidate. The district court held that under K.S.A. 22-3202(1), the offenses charged (1) were of the same or similar character and (2) constituted a common scheme or plan.

With respect to the charged crimes being similar in character, the district court found that both cases involved a sex offense under Kansas law; both cases had allegations of force and violence toward the victim; both cases had the alleged motive of sexual gratification; both women identified Thomas; and both cases involved adult women who were similar in age. Each case was to be tried to a jury and each required the State to present the same kind of evidence. The charged crimes in the cases occurred in the same jurisdiction.

With regard to the charged crimes being part of a common scheme or plan, the district court found that both cases involved women who were similar in age; each case involved a sex offense; each case had allegations of force and violence toward the victims; the alleged motive of sexual gratification was identical in both cases; the offenses occurred two days apart; both women identified Thomas as the perpetrator; and the crimes were allegedly linked together because the arrest of Thomas for the bus incident helped identify the perpetrator of the alleged rape of the first victim.

Thomas does not contest the district court's factual findings on these two consolidation factors, so the issue for us is whether those facts support consolidation; whether under the circumstances consolidation was appropriate; and, if not, whether Thomas was prejudiced thereby.

Crimes are "of the same or similar character" when all the offenses charged have general similarities that "require the same mode of trial and the same kind of evidence, and occur in the same jurisdiction." *State v. Crawford*, 255 Kan. 47, 53, 872 P.2d 293 (1994). The similarity of punishments is another factor to consider. See *State v. Barksdale*, 266 Kan. 498, 507, 973 P.2d 165 (1999). In *State v. Smith-Parker*, 301 Kan. 132, 340 P.3d 485 (2014), the Kansas Supreme Court addressed consolidation of two cases for a single trial and summarized the caselaw analyzing "same or similar character" condition for permitting consolidation:

> "On the first statutory condition, crimes of the same or similar character, we note that earlier Kansas cases that have held consolidation or joinder to be appropriate have generally had multiple commonalities, not merely the same classification of one of the crimes charged. See *State v. Carr*, 300 Kan. 1, 101-04, 331 P.3d 544 (2014) (victims identified defendants; aspects of modus operandi consistent between crimes); *State v. Cruz*, 297 Kan. 1048, 1055, 307 P.3d 199 (2013) (both victims leaving nightclub at closing time; both accosted before reaching vehicle; both had little warning before shot repeatedly; same gun used; defendant identified in both cases; both cases charged first-degree murder, criminal possession of firearm); *State v. Gaither*, 283 Kan. 671, 687, 156 P.3d 602 (2007) (both victims drug dealers; defendant on quest for drugs during both; both victims shot with 9 mm handgun; both occurred in private dwellings; 5-day time span); *State v. Barksdale*, 266 Kan. 498, 506-10, 973 P.2d 156 (1999) (both crimes murder; victims killed in similar manner; robbery common motive); *State v. Crawford*, 255 Kan. 47, 48, 53-54, 872 P.2d 293 (1994) (both crimes robbery; victims identified defendant; similar modus operandi)." *Smith-Parker*, 301 Kan. at 157-58.

Crimes are part of a "common scheme or plan" under K.S.A. 22-3202(1) when the crimes charged are "two or more acts or transactions connected together or constituting parts of a common scheme or plan." To support its conclusion that these crimes were part of a common scheme or plan, the district court noted the State's claim that Thomas "committed similar sex crimes against adult women for his sexual gratification and that they occurred two days apart."

7

Kansas courts have broadly construed the phrase "connected together" to apply when (1) the defendant provides evidence of one crime while committing another; (2) some charges are precipitated by other charges; and (3) all the charges stem from a common event or goal. *State v. Donaldson*, 279 Kan. 694, 699-700, 112 P.3d 99 (2005).

Courts cannot rely on "mere temporal proximity or similar witnesses" to justify consolidation under the third statutory condition. *Smith-Parker*, 301 Kan. at 159.

Here, the most similar connection between the two cases is that in each Thomas claimed to have a relationship with the victim, and both victims denied that relationship. The complaining witness who testified that Thomas raped her stated that she did not know Thomas, while Thomas claimed that he not only knew the victim but that his sexual encounter with her was consensual. With regard to the incident on the bus, the complaining witness testified that she had seen Thomas and had spoken to him at times at the bus terminal, but she denied having any other relationship with Thomas. To the contrary, Thomas testified that he had a romantic relationship with her and that she had agreed to go on a date with him.

The State argues that both sexual offenses started with a "sneak attack" that escalated and then ended in violence. Both women were in places where they believed they were safe from sexual advances—the first victim was at home and the second victim was on a public bus—when Thomas allegedly encountered them. When the women denied Thomas' advances, he reacted violently and used threats. The first victim denied Thomas entry to her home, and Thomas forced his way in, strangled her, hit her in the face, raped her, threatened to shoot and kill her, and said to her, "Bitch you gonna take this." The second victim denied Thomas' advances, and after she hit Thomas in the face, he hit her in the face multiple times. Thomas called her a "bitch" and said "I will kill you" as she ran away from him.

Moreover, according to the State, the allegations stemming from the incident on the bus provided the necessary evidence to support the conviction for the rape of the first victim. It was only after Detective Littlefield discussed the bus incident with another detective that he could connect Thomas to the rape case.

Thomas presents a very close issue for us to decide. Though the State's "common scheme or plan" argument does not appear to us to be highly compelling, it does appear that it was Thomas' common scheme or plan to achieve sexual gratification by approaching unsuspecting women with whom he believed he had a relationship, making unwanted sexual advances, and then reacting violently when the advances were denied. Information regarding the unwanted sexual advances on the bus linked Thomas to the unresolved rape investigation.

With regard to Thomas' crimes being "of the same or similar character," it is true that this language does not limit consolidation only to crimes that are clones of each other. See *Bunyard*, 281 Kan. at 403. But here we are confronted with a wide range of reprehensible criminal conduct displayed in these two cases—rape at one extreme and a pinch on the derriere at the other. These hardly seem to be "of the same or similar character." Nevertheless, it seems to us that the effect of the pinch on the derriere to the second victim would hardly play a significant role in consideration of the charge of rape, particularly in light of the court's limiting instruction to the jury. Besides, had the cases not been consolidated, the State could have relied on K.S.A. 2017 Supp. 60-455(d), which provides that "evidence of the defendant's commission of another act or offense of sexual misconduct is admissible, and may be considered for its bearing on any matter to which it is relevant." Thus, the evidence about the rape of the first victim could have been introduced into Thomas' trial on the sexual battery charge had that charge been tried separately, and conversely, the evidence of the incident on the bus could have been

9

introduced in Thomas' trial on the charge of rape if the rape charge had been tried separately.

Considered another way, if Thomas meets the high burden of establishing that the district court abused its discretion in consolidating these cases for trial, there remains the question whether the State can establish that Thomas was not prejudiced by the district court's consolidation ruling.

When the State moved for consolidation, it also gave notice of its intent to offer propensity evidence under K.S.A. 2017 Supp. 60-455(d). The motion was rendered moot by the district court's consolidation order. Had the consolidation motion been denied, in separate trials of these two cases the State would have been able to present evidence of Thomas' conduct in the other case. See *Hurd*, 298 Kan. at 563.

The jury found Thomas guilty of both sexual battery and battery in the case involving the bus incident, but it only found him guilty of rape and criminal threat in the other case and acquitted him of the aggravated sodomy and aggravated burglary charges. Thomas argues that the jury "clearly had questions pertaining to the allegations raised by [the first victim]" and that consolidating these two cases "improperly bolstered the State's case by painting [Thomas] as a violent, sexual predator." He argues that this improper bolstering undercut his ability to present his defense and get a fair trial because it "painted him as a serial offender, pushing the jury to convict him as he 'must have done something.'"

But this argument disregards the legislative change to K.S.A. 60-455, which now allows for the admission of previously inadmissible sexual misconduct propensity evidence in sex crime cases.

10

The State notes that the district court instructed the jury that "[e]ach crime charged against [Thomas] is a separate and distinct offense. You must decide each charge separately on the evidence and law applicable to it, uninfluenced by your decision as to any other charge." A jury is presumed to follow the court's instructions. *State v. Mattox*, 305 Kan. 1015, 1027, 390 P.3d 514 (2017). The State argues: "If the jury only convicted Thomas of the offenses [in the rape case] because of evidence of the other sexual assault, then why only convict him of two of four counts[?]"

In *State v. Sumpter*, No. 117,732, 2019 WL 257974 (Kan. App. 2019) (unpublished opinion), *petition for rev. filed* April 11, 2019, the defendant sought relief under K.S.A. 60-1507, arguing he was prejudiced because the jurors heard evidence of multiple sexual assaults when his cases were consolidated. As in Thomas' case, the *Sumpter* jury returned a split verdict. This court found:

> "Given the exceedingly broad rules governing the admissibility of sexual misconduct as other crimes evidence, Sumpter cannot demonstrate undue prejudice in his consolidated trial. As we explain, had he been tried separately in each incident, the other incidents would have been admissible under [K.S.A. 2018 Supp. 60-455(d)] to show his propensity or proclivity to engage in sexually aggressive and unlawful conduct. In the consolidated case, however, the jurors were instructed they could consider only the evidence admitted as to a particular charge in determining Sumpter's guilt or innocence of that charge—theoretically preventing them from relying on the multitude of the incidents to bolster the State's evidence of each incident." *Sumpter*, 2019 WL 257974, at *5.

Here, the district court's instruction that the jury should decide each charge separately, only considering the evidence applicable to the specific charge, apparently was effective in view of the fact that the jury convicted Thomas of some charges and acquitted him of others.

11

Based on this analysis, we conclude that the district court's ruling on consolidation does not result in reversible error. There is no reasonable probability that consolidation prejudiced Thomas and impaired his substantive rights by adversely affecting the outcome of his trial.

*Jury Instruction*

Thomas argues that the district court erred in instructing the jury using PIK Crim. 4th 55.030 for the crime of rape. The instruction stated, in part: "It is not a defense that the defendant did not know or have reason to know that [the first victim] did not consent to the sexual intercourse or was overcome by force or fear." This language is taken directly from our rape statute, K.S.A. 2018 Supp. 21-5503(e).

Thomas argues that this portion of the instruction was not legally appropriate because it transforms the crime of rape into a strict liability crime by not requiring proof of a mens rea. He contends that he was thereby denied due process because he was prevented from arguing at trial that *he believed* sex with his victim was consensual.

The instruction reviewing process is well known to the parties and is set forth in *State v. Williams*, 295 Kan. 506, 510, 286 P.3d 195 (2012). There was no objection to this instruction at trial so we apply the clear error standard of review, under which we will reverse only if we find the instruction was given in error and we are "'firmly convinced that the jury would have reached a different verdict had the instruction error not occurred.'" *State v. Knox*, 301 Kan. 671, 680, 347 P.3d 656 (2015) (quoting *Williams*, 295 Kan. 506, Syl. ¶ 5). In our review we ordinarily consider whether the subject instruction was both legally and factually appropriate. *State v. Plummer*, 295 Kan. 156, 161-62, 283 P.3d 202 (2012). In considering whether an instruction was legally appropriate we take into consideration the fact that the Kansas Supreme Court "'strongly recommend[s] the use of PIK instructions, which knowledgeable committees develop to bring accuracy,

12

clarity, and uniformity to instructions.'" *State v. Butler*, 307 Kan. 831, 847, 416 P.3d 116 (2018). But here, we need not spend time examining whether the instruction was factually appropriate because Thomas does not challenge the instruction on that basis.

Thomas' argument that the instruction was not legally appropriate was previously addressed by our Supreme Court in *State v. Plunkett*, 261 Kan. 1024, 934 P.2d 113 (1997). In *Plunkett*, the court held that a jury instruction is legally appropriate when it follows the language of the criminal statute verbatim. With regard to the then-current rape statute, the court stated: "'Rape as defined in K.S.A. 21-3502 does not require as one of the statutory elements of the offense a specific intent on the part of the defendant to commit rape and therefore there is no necessity to instruct on such a specific intent.' [Citation omitted.]" 261 Kan. at 1030. "[The rape statute] does not require proof that the defendant intended to have nonconsensual intercourse. The statute requires proof that the defendant had sexual intercourse without the victim's consent when the victim was overcome by force or fear." 261 Kan. at 1030-31.

Although *Plunkett* was decided before the enactment of our current rape statute and the PIK instruction now at issue, its rationale still applies. In our present case, the PIK instruction given by the court mirrors the language of our current rape statute. That statute, K.S.A. 2018 Supp. 21-5503, states in relevant part:

> "(a) Rape is:
> (1) Knowingly engaging in sexual intercourse with a victim who does not consent to the sexual intercourse under any of the following circumstances:
> (A) When the victim is overcome by force or fear; or
> (B) when the victim is unconscious or physically powerless;
> . . . .
> "(e) Except as provided in subsection (a)(2), it shall not be a defense that the offender did not know or have reason to know that the victim did not consent to the sexual intercourse, that the

13

victim was overcome by force or fear, or that the victim was unconscious or physically powerless."

K.S.A. 2018 Supp. 21-5202(g) provides:

"If the definition of a crime prescribes a culpable mental state with regard to a particular element or elements of that crime, the prescribed culpable mental state shall be required only as to specific element or elements, and a culpable mental state shall not be required as to any other element of the crime unless otherwise provided."

The district court instructed the jury that the State had to prove that Thomas "knowingly" engaged in sexual intercourse. The statute sets forth no other mental state for the crime of rape. Under K.S.A. 2018 Supp. 21-5202(g) this was the only mental state required for a conviction. The court's jury instruction was legally appropriate. Moreover, Thomas makes no assertion on appeal that the instruction was factually inappropriate. Accordingly, we conclude that the district court did not err in giving this instruction.

*The Rape Shield Law*

The State argued at trial that the testimony of Thomas' mother, if admitted, would violate the rape shield law by introducing into the trial inadmissible facts about the victim's prior sexual activity, and Thomas failed to follow the procedural requirements of the statute by not filing a motion and affidavit before trial.

Thomas' counsel told the district court that there were two reasons for the testimony. First, to impeach the testimony of the alleged victim that she had never seen Thomas before the day of the rape. Second:

"The mother would testify to the fact that on this particular occasion some years ago, there's no question about it, this lady came to their house and attempted to have

14

some kind of sexual relations with [Thomas]. It never occurred. The mother stopped it and made the person leave. The person, in fact, was [the complaining witness here]."

The State advised the court that it was informed of this proffered testimony the day before. The State conceded that Thomas' mother could testify

"*whether or not* [*the victim*] *knew* [*Thomas*]*, how well she knew him, if* [*the victim*] *lied under oath at prelim—those questions were fair game . . . because it went to impeachment*. But having the mother testify that when her son was eight years old, somehow this victim was at their house and tried to have sex with him, that does violate the rape shield statute, and I don't think that should be allowed." (Emphasis added.)

The district court noted that "the statute requires that there be a motion and an affidavit, and that a [c]ourt have a hearing prior to trial." The court ruled: "I'm not going to allow that testimony as a violation of the procedures in this case. That should have been filed prior, *so I'm not going to let her testify as to that previous conduct. Now, if she has something else to offer, that's fine*." (Emphasis added.)

Thomas argues on appeal that the district court erred when it refused to allow his mother to testify because her testimony was crucial to undermining the alleged victim's credibility. He concedes that "[w]hile the testimony concerning [the alleged victim's] sexual advances may have fallen under the rape shield protections, [his mother's] testimony concerning her interactions with [the alleged victim] did not."

According to Thomas, his mother's testimony would have called into question the alleged victim's testimony that she did not know Thomas. But for some strange reason that is not explained, although the court and the State left the door open for Thomas to present his mother's testimony that she and Thomas had met the alleged victim before and that the alleged victim had come to their house in the past, Thomas chose not to call his mother as a witness.

15

Thomas mischaracterizes the district court's ruling. He concedes that the parts of his mother's testimony regarding the alleged victim's past sexual advances are barred by our rape shield law, but nevertheless he claims that the district court erred in excluding his mother's impeachment testimony that was not covered by the rape shield law. But it is clear from the record that the district court did not prohibit Thomas from calling his mother to testify that the alleged victim, contrary to her testimony at trial, did know Thomas and had visited him at his home in the past.

It is clear that the district court did not err in its ruling regarding the testimony of Thomas' mother.

*Cumulative Error*

As his final point, Thomas argues that cumulative trial errors deprived him of his constitutional right to a fair trial and require us to reverse his convictions and order a new trial. But there are not multiple errors to accumulate. The only possible error is related to the consolidation of these cases, and we have determined that the court's consolidation ruling did not prejudice Thomas and deprive him of a fair trial. Obviously a single error cannot support reversal under the cumulative error doctrine. *State v. Gonzalez*, 307 Kan. 575, 598, 412 P.3d 968 (2018). This argument fails.

Affirmed.

16