No. 56,755

State of Kansas, *Appellee*, v. Alvin Matzke, *Appellant*.

(696 P.2d 396)

Opinion filed March 2, 1985.

*Alvin Matzke*, of Westmoreland, was on the briefs pro se.

*John D. Watt*, county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for the appellee.

*Per Curiam:* This is a criminal action in which Alvin Matzke (defendant-appellant) appeals a conviction of one count of impairing a security interest (K.S.A. 21-3734). The defendant filed and briefed his appeal pro se. He expressly waived presentation of oral argument before this court.

The events which led to this criminal action against Matzke began when he borrowed money for his farming operations from the First National Bank of Onaga, Kansas (FNB) and from the Farmers Home Administration (FHA). On January 11, 1980, Matzke entered into a security agreement with the FHA. On May 20, 1981, he entered into a security agreement with the FNB.

Both agreements provided that the creditors were to have security interests in all of Matzke's livestock, both presently owned and after acquired. Each agreement also listed certain specific livestock and machinery which were subject to the security interest. Further, both agreements contained clauses which required the debtor (Matzke) to obtain written permission from the creditor before selling any secured property. Despite this clause, the FNB made it a practice to allow sales by the debtor without permission as long as the proceeds were applied to the debt. See *Peoples National Bank & Trust v. Excel Corp.*, 236 Kan. 687, 695 P.2d 444 (1985). The FHA, on the other hand, never waived the requirement for written permission.

Between October of 1981 and January of 1982, the defendant sold much of his livestock at various sale barns. All such sales were in the absence of written permission and knowledge of the creditors. The defendant pocketed most of the proceeds from these sales and sent the remainder to the National Commodity Exchange (NCE). The NCE, an organization which promotes the theory that the federal reserve system is illegal, was not a secured party.

In November of 1981, the FNB requested Matzke's permission to visit his farm in order to inspect its secured property. Up to this time, Matzke had always complied with such requests and had made good faith efforts to apply money to his debt. However, beginning in November, Matzke refused such inspections and threatened those who sought admittance to his land for such purposes. He also ceased making payments to the FNB. Shortly after these troubles arose, the FNB began foreclosure procedures on Matzke's loan. Following the foreclosure, the FNB's attempts to repossess its collateral revealed that much of Matzke's livestock was missing. After making this discovery, the FNB and the FHA, through the prosecuting attorney, instigated the criminal proceeding which led to this appeal.

On August 16, 1983, the defendant was charged with two counts of impairing a security interest in violation of K.S.A. 21-3734. The first count alleged that the defendant had sold or disposed of secured property, while the second count alleged that the defendant had concealed such property. Evidence at the preliminary hearing revealed that Matzke had sold, and not

concealed, the missing livestock. Consequently, the second count was dismissed without prejudice.

Matzke presents for our consideration four issues on appeal.

## I.

Matzke first contends that the District Court of Pottawatomie County lacked jurisdiction in this criminal proceeding. The defendant's argument, as we perceive it, is two-fold. First, he claims he had become an "Absolute Natural Person" by virtue of filing affidavits which purport to revoke all power "formerly granted" to any and all governmental agencies which are referred to by Matzke collectively as the "cestui que trust." As an "Absolute Natural Person," Matzke believes he has removed himself from the bounds and strictures of our society and from the jurisdiction of the courts and other governmental entities. Second, Matzke claims the State of Kansas is not a legal entity, and, therefore, cannot be a plaintiff in any criminal proceeding.

Matzke cites no authority to support his assertions. Although we have attempted to understand the defendant's arguments, we find them completely lacking in logic and substance.

The court clearly had personal and subject matter jurisdiction. In personam jurisdiction is acquired when the properly served defendant is a resident of this state. Matzke was, at all times, a resident of Kansas and he was properly served. Venue in Pottawatomie County was proper because the defendant's criminal act was committed within that county. K.S.A. 22-2602.

Subject matter jurisdiction is the power of the court to hear and decide a particular type of action. Kansas district courts are courts of general jurisdiction, and, under K.S.A. 20-301 and K.S.A. 22-2601, the district court was the proper court in which to initiate this criminal action.

All statutory requirements concerning the issuance of the complaint, arrest pursuant to a warrant, initial appearance, preliminary hearing, arraignment and trial were followed. The defendant was not denied due process of law.

The defendant's argument does not seem to be based on the application of these statutes or their constitutionality. Rather, he would have us hold that he is not subject to the law due to his self-proclaimed status as an "Absolute Natural Person." Recognition of this concept would abrogate the law established pursuant to the Kansas and United States Constitutions. We hold that a

person may not extricate himself from his liabilities or obligations under the law by declaring that he is an "Absolute Natural Person" or by claiming to revoke some power "formerly donated" to governmental agencies.

Matzke's contention that Kansas is not a legal entity because it has ceased to have a republican form of government is wholly without merit.

## II.

The defendant next contends he was denied "counsel of his choice" in the proceedings before the district court.

Matzke was informed of his right to counsel during his first appearance on August 25, 1983. From that time until he was finally sentenced, Matzke demanded that the court allow his non-lawyer friend to represent him. In answer to this repeated demand, the court would inform Matzke that he could be represented by an attorney or that he could represent himself, but that a lay person could not represent him before the court. Matzke was informed that he was free to speak with and consult his friend for advice, but a non-lawyer could not be allowed to practice law before the court. The court also advised Matzke of the advantages of having counsel and of the disadvantages of self-representation.

A typical colloquy between the court and Matzke regarding the appointment of counsel was as follows:

"THE COURT: This is Case 83-CR-329, State of Kansas vs. Alvin Matzke. The matter is before the Court this morning for arraignment. Mr. Matzke appears in person. The State appears by Mr. John Watt, the County Attorney.

"Mr. Matzke, are you representing yourself in this matter, sir?

"THE DEFENDANT: At this point I'm representing myself, but I do need counsel.

"THE COURT: Are you asking the Court to appoint an attorney for you?

"THE DEFENDANT: Counsel has been appointed. Court has appointed counsel. He's not here, today.

"THE COURT: Well, no. The Court will have to consider whether or not to reappoint at this stage of the proceedings, Mr. Matzke. My —

"THE DEFENDANT: (Interrupting) For what reason, sir?

"THE COURT: Because we're starting into a new phase of the case and this Court is obligated to do so, and in doing that this Court is obligated to determine whether or not you are legally entitled to have an attorney appointed for you.

"Are you asking the Court to appoint an attorney for you?

"THE DEFENDANT: I am asking the Court for counsel of my choice.

"THE COURT: Well, you are not entitled to counsel of your choice, neces-

sarily. That depends on who it is. Who is it that you're asking to be appointed for you?

"THE DEFENDANT: My best friend.

"THE COURT: Is he a licensed attorney?

"THE DEFENDANT: No, he's not.

"THE COURT: Well, that cannot be done. That's not legally permissible.

"THE DEFENDANT: It's denying me the Fifth Amendment of counsel of my choice.

"THE COURT: It is not legally permissible, Mr. Matzke. If you want the Court to appoint counsel for you, the Court will appoint a licensed attorney for you.

"THE DEFENDANT: I object to your proceedings, sir.

"THE COURT: Well, the record will note your objection, but if you want counsel appointed you will be required to complete an Affidavit setting forth your property, your income and your debts, so that I can determine from that whether or not you are legally entitled to have an attorney appointed for you."

The defendant never filed an indigency affidavit. He did file a document which stated he intended to proceed pro se.

Upon the defendant's request, the court appointed a standby attorney to be present for consultation at trial. Matzke did, in fact, consult with his standby attorney on numerous occasions.

After reviewing the record, it is clear the defendant was fully informed of his right to be represented by an attorney or to represent himself. The trial court took all necessary steps to insure that the defendant's decision to represent himself was knowingly and intelligently made. *Faretta v. California*, 422 U.S. 806, 45 L.Ed.2d 562, 95 S.Ct. 2525 (1975). The authority to appoint standby counsel rested within the sound discretion of the trial court. *Locks v. Sumner*, 703 F.2d 403, 407 (9th Cir. 1983); *United States v. Gigax*, 605 F.2d 507, 517 (10th Cir. 1979).

The trial court did not err in refusing to allow a lay person to represent the defendant. It is well established that a criminal defendant has no constitutional right to have an unlicensed attorney or lay person represent him. In particular, the Sixth Amendment does not create a right to be represented by a non-attorney. *United States v. Taylor*, 569 F.2d 448, 451 (7th Cir. 1978); *United States v. Grismore*, 546 F.2d 844 (10th Cir. 1976); *Fair v. Givan*, 509 F. Supp. 1086 (N.D. Ind.1981); *State ex rel. Stephan v. O'Keefe*, 235 Kan. 1022, 686 P.2d 171 (1984). To hold otherwise would amount to court sanction of the unauthorized practice of law.

## III.

On January 18, 1984, five days prior to trial, Matzke filed a "Removal" in the United States District Court in which he purported to remove the action from the state court pursuant to 28 U.S.C. § 1443 (1982). The federal court denied the motion and remanded the case back to the state court on January 23, 1984. The state court informed Matzke that the case had been remanded and, on that same day (January 23), the case proceeded to trial as scheduled. The jury returned a verdict on January 24. On January 25, 1984, a certified copy of the remand order was filed in the Pottawatomie County District Court.

On appeal, Matzke argues the state court lacked jurisdiction at the time of trial because it did not yet have a copy of the remand order in its possession. It is noteworthy that Matzke never objected to the notice of remand prior to this appeal. It is also noteworthy that Matzke cites no authority for this contention of error.

Under the provisions of 28 U.S.C. § 1446 (1982), the state court retains jurisdiction of criminal matters upon the filing of a removal petition in the federal court. The state court may continue with proceedings, except a judgment of conviction cannot be entered unless the petition has been denied. 28 U.S.C. § 1446(c)(3) (1982). The state court's jurisdiction is completely suspended only if the removal is granted. 28 U.S.C. § 1446(c)(5) (1982).

Since the federal court never granted the removal, the state court retained jurisdiction at all times. The judgment of conviction was not entered until the defendant was sentenced on March 12, 1984. *State v. Moses,* 227 Kan. 400, 607 P.2d 477 (1980). Since the removal had been denied prior to that time (on January 23) the state court clearly had jurisdiction under 28 U.S.C. § 1446(c)(5) (1982) to enter the judgment of conviction.

The lack of physical possession of a certified copy of the remand order on the day the verdict was handed down did not deprive the state court of jurisdiction. See *Johnson v. Estelle,* 625 F.2d 75, 78 (5th Cir. 1980).

## IV.

The defendant's final argument is that there was insufficient evidence presented at the preliminary hearing to provide a finding of probable cause necessary to hold the defendant for

trial. The defendant apparently does not challenge the sufficiency of the evidence at trial.

At no time prior to trial did Matzke challenge the probable cause finding at the preliminary hearing. A challenge to the sufficiency of the preliminary hearing must be made prior to trial by a motion to dismiss. K.S.A. 22-3208. This court has held that where a defendant fails to raise this issue by a timely motion to dismiss, he waives the right to challenge the preliminary hearing, and is precluded from raising the issue on appeal. *State v. Weigel,* 228 Kan. 194, 612 P.2d 636 (1980); *State v. Smith,* 225 Kan. 796, 594 P.2d 218 (1979); *State v. Smith,* 215 Kan. 34, 37, 523 P.2d 691 (1974).

Accordingly, this issue is without merit.

The judgment of the trial court is affirmed.