NOT DESIGNATED FOR PUBLICATION

No. 122,187

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

T.C.
on Behalf of Minor Child
H.C.,
*Appellee*,

v.

GARY FALER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; ROBERT G. SCOTT, magistrate judge. Opinion filed July 17, 2020. Affirmed.

*J. Steven Schweiker*, of Overland Park, for appellant.

*Catherine A. Zigtema*, of Zigtema Law Office LC, of Shawnee, for appellee.

Before WARNER, P.J., MALONE and BRUNS, JJ.

PER CURIAM: Gary Faler appeals from the district court's denial of a motion to vacate a protection from stalking order entered against him in an action brought by T.C. on behalf of her minor son. Faler also appeals from the district court's granting of an extension of the protective order for an additional year. Based on our review of the record, we do not find that the district court erred in denying the motion to vacate or in extending the original order. In addition, we find that each party should pay his or her own attorney fees relating to this appeal. Thus, we affirm the district court's decision and we deny the motion for attorney fees on appeal.

1

T.C. (Mother) is the mother of H.C., a 13-year-old boy who she adopted in July 2018. Although H.C. is not related biologically to Mother or her late husband, J.C. (Father), his older half-brother C.C.—who is over 18 years old—is Father's nephew. The two boys began living with Mother and Father in 2014. They did not adopt C.C. but he continued to live with them until he left for college in Nebraska.

Gary Faler—who is a 70-year-old realtor—was a long-time friend of the family. The record reflects that Father was a sixth-grade student in a Sunday School class that Faler taught. Over the years, Father—who worked for many years as a sheriff's deputy—was close to Faler. Among other things, Faler was in Mother and Father's wedding, he babysat their biological children, and they attended the same church. Beginning in 1999, Mother became part of Faler's real estate team and the two worked together for several years.

In 2016, Faler began spending time with C.C., provided him with money—including a debit card—and purchased cigarettes for him when he was underage. Mother and Father believed that C.C. was using the money to buy marijuana, cigarettes, and perhaps other substances. In response, they told Faler on several occasions that he should stay away from C.C. as well as H.C. Evidently, Father terminated his friendship with Faler in 2017 and told him to stay away from the two boys. However, it appears that Faler continued to have contact with both C.C. and H.C.

In May 2018, Faler met H.C. outside his house and took him out to eat without the Mother and Father's permission. Shortly thereafter, in June 2018, Faler met with H.C. and two of H.C.'s friends in a neighborhood park and took them to eat at a Pie Five restaurant followed by a trip to Freezing Moos without asking Mother and Father for permission to do so. Unfortunately, a few weeks later, Father died of cancer in July 2018.

On August 23, 2018, Mother filed a petition for a protection from stalking order on behalf of H.C. In her petition, Mother alleged that despite being repeatedly told to stay away from C.C. and H.C., Faler continued to contact them. In particular, Mother pointed to the events in May and June 2018. She indicated her fear as a parent that Faler would negatively influence H.C. the way he had influenced C.C. On the day the petition was filed, the district court granted a temporary order requiring Faler to stay away from H.C. Specifically, the temporary order instructed Faler to stay away from H.C.'s middle school and from the church they all attended. However, on September 13, 2018, the district court amended the temporary order to remove the requirement that Faler stay away from their church.

On September 21, 2018, the district court held an evidentiary hearing. Mother testified consistently with her allegations in the petition. She also indicated that she was "very scared" and "afraid" for H.C.'s safety based on Faler's past interaction with C.C. as well as his repeated contacts with H.C. after being told not to do so. In his defense, Faler testified about his long-time relationship with Mother and Father's family. He admitted that he defied the directives to stay away from C.C. and H.C. because he was "very good friends" with both children.

Although Faler admitted to giving C.C. money and cigarettes, he testified that he was simply trying to help the boys. He also indicated that he had filled a similar role in Father's life when he was growing up. In addition, Faler testified that after his contacts with H.C. in May and June 2018, C.C.—who was now an adult—told him that he had spoken to Mother. As a result, Faler believed that things had been worked out as long as he stayed away from H.C. in the future. According to Faler, he did just that and stopped seeing H.C. even before being served with the protection from stalking petition.

After listening to the testimony, the district court granted the petition and entered a protection from stalking order for a period of one year. Specifically, the district court

3

found that Mother—first as a foster parent and later as an adoptive parent—had a legal right to take steps to provide for the care and safety of H.C. The district court also found Mother's concerns regarding H.C.'s safety to be reasonable. In particular, the district court pointed to the evidence that Faler had given C.C. "deadly instruments, i.e. cigarettes" when he was still a minor. The district court explained that giving cigarettes to children was not an act of love. Based on Faler's past interactions with both C.C. and H.C., the district court determined that Mother had shown by a preponderance of the evidence that she had a reasonable fear for H.C.'s safety if he continued to interact with Faler. The district court also ordered that Faler attend counseling regarding appropriate interaction with children.

On September 4, 2019, Mother filed a pro se motion to extend the protection from stalking order for an additional year. In her motion, she stated that while Faler had not violated the protection from stalking order, she believed the order was the only thing preventing him from contacting H.C. and that she still feared for his safety. She reiterated the evidence regarding Faler's past interactions with C.C. and H.C. She also reiterated that Faler had defied the directives from her and her late husband to stop spending time with the boys prior to the filing of the initial petition for a protection from stalking order.

In response, Faler asked the district court to deny the request for extension and moved to vacate the original protection from stalking order. In support, he asserted that he had complied with the protection from stalking order and had completed the required counseling. Faler also argued that an extension of the protection from stalking order would be unfair because the original order "substantially infringed upon" his right to attend church services for fear that H.C. might approach him. In addition, he asserted that the original protection from stalking order should be vacated pursuant to K.S.A. 2019 Supp. 60-260(b)(4)-(b)(6).

4

On October 31, 2019, the district court held a hearing on Mother's request for an extension and on Faler's motion to vacate the original protection from stalking order. After hearing the argument, the district court extended the protection from stalking order until September 21, 2020. In doing so, the district court found:

> "It's a duty of a parent to watch out for the welfare of . . . their children. If a parent believes that something dangerous is being provided to or has the potential to be provided to their children, it's a duty of a parent. It's . . . not only an ethical or a moral duty; it's . . . a legal duty for a parent to provide a safe situation for the [child]. And it's the parent's duty to make the determination as to what is safe for their children. The children may not . . . appreciate that. They may not agree with that, but . . . it's a heavy burden that a parent must weigh and must fulfill to provide . . . what they deem to be a safe environment for their child.
>
> "That is what the [c]ourt interpreted this case as being about . . . . [F]ear for safety, fear for personal safety, cigarettes, . . . if provided, do provide or do have the potential of being unsafe to an individual's personal safety."

The district court further denied Faler's motion to vacate the original protection from stalking order on the ground that it was untimely filed. It noted that Faler had a reasonable time to file the motion but failed to do so for more than a year after the original order had been entered. Thereafter, Faler filed this appeal and Mother filed a motion seeking attorney fees on appeal.

ANALYSIS

*Motion to Vacate Protection from Abuse Order*

On appeal, Faler contends that the district court erred in failing to vacate the original protection from stalking order as void pursuant to K.S.A. 2019 Supp. 60-260(b)(4). In particular, he argues that "the [district] court lacked subject matter jurisdiction and the Protection from Stalking Order is void." Subject matter jurisdiction

5

may be raised at any time, whether for the first time on appeal or even on the appellate court's own motion. *In re Care & Treatment of Emerson*, 306 Kan. 30, 33, 392 P.3d 82 (2017). The question as to whether subject matter jurisdiction exists is a question of law over which our review is unlimited. *State v. Dunn*, 304 Kan. 773, 784, 375 P.3d 332 (2016).

Subject matter jurisdiction is the power of a court to adjudicate a particular type of action. 304 Kan. at 784. The power to adjudicate protection from stalking actions is conferred in K.S.A. 2019 Supp. 60-31a03, which provides that "[t]he district courts shall have jurisdiction over all proceedings under the protection from stalking . . . act." Likewise, K.S.A. 2019 Supp. 60-31a01(b) provides that the protection from stalking act "shall be liberally construed to protect victims of stalking . . . and to facilitate access to judicial protection for victims of stalking . . . whether represented by counsel or proceeding pro se."

Under K.S.A. 2019 Supp. 60-31a02(d), "stalking" is defined as "intentional harassment of another person that places the other person in reasonable fear for that person's safety." Here, Mother alleged in the petition that she sought the protection from stalking order on behalf of her minor son, H.C., and identified two specific incidents in which Faler took H.C. in a car without her permission. She also alleged that Faler had been asked on several occasions to stay away from her minor son.

In addition, Mother alleged in the petition that H.C. needed to be protected because she was afraid that Faler would continue to have contact with him. Further, she alleged her belief that Faler was a "[b]ad influence" on her son based on his previous interactions with her nephew. In particular, Mother alleged that Faler had provided cigarettes to her nephew and offered to purchase alcohol for him when he was a minor.

6

We find that these allegations were sufficient to invoke the subject matter jurisdiction of the district court as conferred upon district courts in K.S.A. 2019 Supp. 60-31a03. This is particularly true in light of the requirement to liberally construe the protection from stalking act in order to facilitate access to the district court. Moreover, to the extent that Faler argues that there was not sufficient evidence to support the allegations set forth in the petition, it is important to recognize that a district court is not deprived of subject matter jurisdiction simply because there is insufficient evidence to support a legal claim. See *State v. Matzke*, 236 Kan. 833, 835, 696 P.2d 396 (1985). Accordingly, we conclude that the district court did not err in denying Faler's motion to vacate the original protection from stalking order.

*Extension of Protection from Stalking Order*

Next, Faler contends that the district court erred in extending the protection from stalking order for an additional year. K.S.A. 2019 Supp. 60-31a06(c) provides: "Upon motion of the plaintiff the court *may* extend the order for an additional year." (Emphasis added.) Just like the initial protection from stalking petition, the motion for extension must be personally served on the defendant and proven by a preponderance of the evidence after an evidentiary hearing. K.S.A. 2019 Supp. 60-31a06(d). In other words, the district court—exercising its sound discretion—makes the decision whether to extend the protective order based on a preponderance of the evidence. See *Jordan v. Jordan*, 47 Kan. App. 2d 300, 304-06, 274 P.3d 657 (2012) (applying an abuse of discretion standard of review where a district court extends a protection from abuse order).

So, we must determine whether the district court abused its discretion in extending the order for an additional year. A district court abuses its discretion when the judicial action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013). The party asserting the district court abused its

7

discretion—in this case Faler—bears the burden of showing such abuse of discretion. *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017).

Based on our review of the record, we do not find that the district court abused its discretion in extending the protection from stalking order for an additional year. Although we agree that this was a close call in light of the fact that there is no indication that Faler violated the terms of the initial protective order or attempted to do so, we cannot say that the district court's action was unreasonable. Likewise, we do not find anything in the record to suggest that the district court made an error of law or fact in extending the protection from stalking order for an additional year.

Although Faler argues that it would be unfair to him for Mother to seek further extensions of the protective order as H.C. grows older, we do not render advisory opinions. See *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016). As such, we take no position on whether the protective order should be extended in the future. Also, while we understand Faler's concerns regarding his attendance at the church the parties attend, we note that neither the original protection from abuse order nor the extended protective order have any restrictions on Faler attending church. So long as he does not interact with H.C. while he is at the church, the order should not impact Faler's freedom to worship. Thus, we conclude that the district court did not err by extending the protection from stalking order to September 21, 2020.

*Request for Attorney Fees*

Finally, Mother has filed a motion with this court requesting attorney fees on appeal because "this appeal is frivolous and the District Court had authority to award fees in this matter." Under Kansas Supreme Court Rule 7.07(b)(1) (2020 Kan. S. Ct. R. 50), "[a]n appellate court may award attorney fees for services on appeal in a case in which the district court had authority to award attorney fees." See *Hodges v. Johnson*, 288 Kan.

8

56, 74, 199 P.3d 1251 (2009). Even though no attorney fees were awarded in this case, a district court has discretion to grant attorney fees under K.S.A. 2019 Supp. 60-31a06(f).

Like the district court, the question of whether to grant attorney fees on appeal is left to our sound discretion. See *Snider v. Am. Family Mut. Ins. Co.*, 297 Kan. 157, 160, 298 P.3d 1120 (2013). A frivolous appeal is one in which no justiciable question has been presented and is devoid of merit. *McCullough v. Wilson*, 308 Kan. 1025, 1037, 426 P.3d 494 (2018) (citing *Blank v. Chawla*, 234 Kan. 975, 982, 678 P.2d 162 [984]). Although we do not question the reasonableness of the attorney fees requested nor do we question the value of the legal services provided by Mother's counsel, we do not find this appeal to be frivolous. In particular, we find that Faler presented a justiciable question regarding whether the extension of the protection of stalking order should have been granted absent any showing that he had violated the terms of the order or any attempt to do so.

Even though we find that it is appropriate to yield to the discretion of the district court regarding whether to grant an extension of the protective order for an additional year, we also recognize that Faler presented several valid—albeit unpersuasive— arguments in his defense that are supported by evidence in the record. In particular, the record reflects that Faler has completed the required counseling and there is no allegation that he violated—or attempted to violate—the original stalking order. Moreover, as indicated above, the record reflects that Faler had a close relationship with Mother and Father for many years, he attends the same church as their family, and he does not have a criminal record. Under the circumstances presented in this case, we find that each party should be responsible for his or her own attorney fees. Thus, Mother's motion for attorney fees on appeal is denied.

Affirmed.