NOT DESIGNATED FOR PUBLICATION

No. 121,757

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ARKADTIS R. HUBBARD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JOHN J. KISNER JR. and JEFFREY SYRIOS, judges. Opinion filed January 15, 2021. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., POWELL and GARDNER, JJ.

PER CURIAM: Arkadtis R. Hubbard appeals from the denial of a request for appointed or standby counsel during trial after the district court allowed him to represent himself at trial, as well as from the district court's pretrial rulings denying his requests for standby counsel. As to his request for court-appointed counsel at trial, the court determined that Hubbard made the request in bad faith and that appointing counsel would materially disrupt the proceedings. After a thorough review of the questions presented, we find no error and affirm the district court's rulings.

1

Officer Tyce Atwood, with the Wichita Police department, was on patrol one evening in January 2017 when he noticed a Buick run a stop sign. He turned on his lights to initiate a traffic stop but the Buick sped away. Thus began a high-speed pursuit in excess of 95 miles per hour that eventually ended when the Buick hit another vehicle and came to a stop in a ditch. A man, later identified as Hubbard, exited the vehicle and fled on foot. The officer gave chase and found Hubbard hiding under an overpass. Once other officers arrived, they placed Hubbard under arrest. During the foot chase, the officer observed Hubbard remove his coat, which an officer later located. Inside, they discovered a small clear bag containing a white powdery and crystal-like substance, an Altoids tin containing a yellow pill, and a black bag containing a blue pill. Testing indicated that both pills were methamphetamine.

The State charged Hubbard with one count of possession of methamphetamine, a felony in violation of K.S.A. 2016 Supp. 21-5706(a) and (c)(1); alternative counts of fleeing or attempting to elude an officer, in violation of K.S.A. 2016 Supp. 8-1568(b)(1)(C) or (D); one count of driving while suspended in violation of K.S.A. 2016 Supp. 8-262(a)(1); and one count of failure to stop, in violation of K.S.A. 8-1528. Because of Hubbard's indigency, the district court appointed a public defender to represent him following his first appearance.

Before the preliminary hearing, Hubbard moved to dismiss his appointed counsel based on claims of ineffective assistance and conflicts with his public defender. In lieu of appointed counsel, Hubbard requested to represent himself or to be provided only standby counsel. The district court took up these motions at the scheduled preliminary hearing on January 30, 2018. After reviewing the factors from *State v. Lowe*, 18 Kan. App. 2d 72, 76-77, 847 P.2d 1334 (1993), and finding Hubbard had knowingly and intelligently waived his right to counsel, the court allowed him to proceed pro se but

declined to appoint standby counsel. After the State presented its evidence, the court granted Hubbard's request for a continuance of the preliminary hearing so that Hubbard could present evidence.

The district court continued the preliminary hearing several more times at Hubbard's request, during which the court appointed an investigator to help Hubbard serve subpoenas to witnesses and obtain evidence. During this time, the court also declined Hubbard's request for standby counsel.

Ultimately, the preliminary hearing resumed on March 28, 2018. Hubbard questioned an officer involved in his arrest and submitted body cam videos of the incident as evidence. The district court bound Hubbard over for trial and he entered a plea of not guilty, then requested appointed counsel "from here on out." The court appointed the public defender again but also advised Hubbard that the right to request appointed counsel was "not just absolutely automatic" and could be denied "under certain circumstances." As an example, the court told Hubbard that "[i]f you show up a couple of days before trial or you show up the day of trial and say, hey, judge, I want a lawyer, it may be too late."

Three months later, Hubbard moved again to dismiss appointed counsel. During a preliminary hearing in an unrelated criminal case, Hubbard asked to proceed pro se in both cases. As a result of Hubbard's "behavior and comments in court" as the court began going over the *Lowe* factors, it ordered a competency evaluation for Hubbard and removed the cases from the docket.

Two months later, the district court issued an order finding Hubbard to be competent and placed the case back on the docket. The court also granted Hubbard's request to proceed pro se after going over the factors from *Lowe*, ultimately finding that Hubbard "knowingly and intelligently waived his right to counsel and has knowingly and

3

intelligently made a decision to represent himself." However, the court declined to appoint standby counsel, explaining that the previous denial was "the law of the case" and noting on the order of denial that "[t]he public defender (previous counsel) cannot perform that function."

About four months later, on the Friday before the scheduled jury trial, Hubbard asked the district court to appoint his counsel from another case, Mark Hartman, to represent him in this case. Although the State said it was ready for trial, it did not object to a continuance so Hartman could prepare for the trial. Ultimately, the court granted Hubbard's request and continued the trial date to May 2019.

Seventeen days before trial, Hubbard moved again to proceed pro se, arguing that Hartman was providing ineffective assistance. The district court took up that motion at a hearing six days later, ultimately finding that Hubbard had an unqualified right to represent himself if asserted before trial and went over the *Lowe* factors with him again, concluding that Hubbard had made a knowing and intelligent decision to represent himself. Later at that hearing, the district court explained that Hubbard could still file his planned motion to dismiss but declined to grant a continuance of the trial. Hubbard repeatedly stressed that he was not requesting a continuance at that time.

The three-day jury trial began as scheduled. At the outset, Hubbard moved to dismiss the charges and for a continuance, explaining that the clerk's office had refused to accept his handwritten motion because it was being submitted by a third party. Hubbard said he had asked his investigator to drop the motion off with the clerk's office the Friday before the trial. The district court allowed Hubbard to file the motion but denied the request for a continuance, and the parties proceeded with jury selection. The court denied the motion to dismiss.

4

The State's first witness at trial was Officer Atwood, the officer who saw the Buick run the stop sign and then started the pursuit that ultimately led to Hubbard's arrest. During cross-examination, Hubbard requested a bench conference. With only the parties and judge present, Hubbard explained that he was "having a difficult time with [his] emotions" and did not want to "get out of order" or "disrespect" the courtroom. Hubbard then asked for "[s]tand-by counsel, counsel," but later clarified that he was asking for counsel to represent him at trial "[b]ecause I'm having difficulty presenting my evidence." The State objected to standby counsel because "there's no right to hybrid representation," but asserted it would need to research Hubbard's request for appointed counsel over the lunch break.

After the break, the State asked the district court to deny Hubbard's motion for appointed counsel based on *State v. Campbell,* No. 116,551, 2018 WL 1352541 (Kan. App. 2018) (unpublished opinion), *rev. denied* 308 Kan. 1596 (2018). The State explained that *Campbell* was "very, very similar to the situation we find ourselves in today." The State explained that in *Campbell*, the defendant had elected to proceed pro se and the court had denied his requests for standby counsel before trial "as is common in this jurisdiction." The defendant then made "essentially the same motion Mr. Hubbard's making today" during the trial, which the court ultimately denied as untimely and because appointing counsel would have been materially disruptive. As a result, the State asserted that Hubbard's similar request was being made in bad faith and would disrupt the trial.

Hubbard responded that he was "forced to go pro se" because of ineffective assistance and "not being able to trust [Hartman]." Hubbard also understood his right to counsel under the Sixth Amendment to the United States Constitution meant he could request appointed counsel "at any time."

Ultimately, the district court denied Hubbard's requests. First, the court explained that allowing hybrid representation is a discretionary act and generally not allowed by the Sixth Amendment, as explained in *Campbell*. The court noted that the public defender's office refused to act as standby counsel due to malpractice concerns and that appointing standby counsel would "cause significant delay" and require a mistrial. The court questioned who it could even appoint, explaining:

"Mr. Hartman isn't available. He won't do it. Mr. Hubbard doesn't want him to do it. I don't believe anybody in the conflicts office would do it. So I'd have to get private counsel to do it, and no counsel is going to come in here nor would I order counsel to come in here and be stand-by in a trial that they know nothing about."

As for the request for appointed counsel, the district court explained, based on *State v. Plunkett*, 261 Kan. 1024, 1028-29, 934 P.2d 113 (1997), that "although a defendant has a right to self-representation, that right is unqualified only if it is asserted before trial." For a request asserted after the trial begins, "a decision to grant or deny self-representation lies within the sound discretion of the trial judge." The court then found, based on *Campbell*, that Hubbard's request for appointed counsel was made in bad faith because it was his fourth such request after he had asked to represent himself three times before the trial, and that it would be a material disruption because it would require a declaration of a mistrial.

The district court also discussed other factors supporting its decision, including: (1) Hubbard's respectful demeanor throughout the case; and (2) Hubbard's success in getting a police report admitted into evidence that might have otherwise been excluded and eliciting an admission of a misstatement by the officer on cross-examination. Finally, the court noted that it had advised Hubbard of the *Lowe* factors several times, meaning that Hubbard could request appointment of counsel or retain counsel "at any time" but

6

also "that no postponement would be permitted at any time during the proceeding for reason that counsel was newly brought into the case."

Hubbard then asked whether he could retain counsel, to which the district court explained again that there would be no postponement for that purpose. Hubbard then refused to participate and asked to be removed from the courtroom, but the court declined his request. After further discussion, Hubbard asked if the court would be willing to reappoint Hartman. The court again declined but said, "If [Hartman] approached me and said I want in and I'm willing to walk in now and represent him, I might reconsider that, but I'm not going to go ask him. I can't do that."

Ultimately, the trial continued with Hubbard representing himself, resulting in the jury returning a guilty verdict on all counts. The district court then reappointed the public defender at Hubbard's request to represent him at sentencing.

At sentencing, without objection, the district court found Hubbard's criminal history score to be E. The court then imposed a sentence of 18 months' imprisonment on the possession of methamphetamine conviction as the primary offense, 6 months' imprisonment on the fleeing or eluding conviction, and no fine on the traffic infraction for failure to stop. The court ran the counts consecutively for a controlling 24-month sentence with 12 months' postrelease supervision.

Hubbard timely appealed.

ANALYSIS

*The district court did not err by failing to appoint standby counsel.*

Hubbard argues that the district court erred by denying his pretrial requests for standby counsel. He asserts that "it is clear throughout the proceedings [that] standby counsel would have been beneficial" based on his struggles to obtain witnesses and evidence or file motions, thus amounting to an abuse of discretion. As a result of those struggles, Hubbard contends the district court failed to ensure he received a fair trial and that lack of standby counsel cannot be "written off as harmless."

The State responds that criminal defendants have no right to hybrid representation and that the decision of whether to provide standby counsel is a discretionary matter for the district court. In short, the State points out that the court repeatedly warned Hubbard about the disadvantages of pro se representation and he still chose to represent himself, therefore, the court did not abuse its discretion by declining to appoint standby counsel.

As both parties note, the appointment of standby counsel for a pro se litigant rests within the sound discretion of the district court. *State v. Matzke*, 236 Kan. 833, 837, 696 P.2d 396 (1985). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018). As the party asserting the district court abused its discretion, Hubbard bears the burden of showing such abuse of discretion. See *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

The United States Supreme Court has long recognized that the Sixth Amendment right to assistance of counsel—as made applicable to the states through the Fourteenth Amendment—guarantees that a criminal defendant also has an independent constitutional right to self-representation. *Faretta v. California*, 422 U.S. 806, 821, 95 S. Ct. 2525, 45

L. Ed. 2d 562 (1975); see *State v. Bunyard*, 307 Kan. 463, 470, 410 P.3d 902 (2018). Yet the Kansas Supreme Court recognizes that "[w]hile a party has the right to represent himself or herself or be represented by counsel, he or she does not have the right to a hybrid representation." *State v. Holmes*, 278 Kan. 603, 620, 102 P.3d 406 (2004) (citing *State v. McKessor*, 246 Kan. 1, 12, 785 P.2d 1332, *cert. denied* 495 U.S. 937 [1990]). Despite these longstanding precedents, Hubbard now asks this court to find the district court abused its discretion by failing to approve hybrid representation before trial and that this failure amounts to more than a harmless error. Simply put, Hubbard has not established he is entitled to relief on this point.

As support, Hubbard mainly relies on two unpublished decisions from this court. First, relying on *State v. Jones,* No. 118,846, 2019 WL 1087102, at *6 (Kan. App.) (unpublished opinion), *rev. denied* 310 Kan. 1067 (2019), he asserts that "when a defendant proceeds *pro se,* the 'district court should appoint competent standby counsel for the defendant.'" Next, based on *City of Lawrence v. Jackson,* No. 110,828, 2015 WL 1310152, at *7 (Kan. App. 2015) (unpublished opinion), he asserts that "[s]tandby counsel would have been able to assist Hubbard throughout the criminal proceedings and helped to ensure a fair trial."

Neither of the unpublished decisions cited in Hubbard's brief establish a categorical rule that a pro se litigant must receive the assistance of standby counsel to receive a fair trial. The issue presented in *Jones* turned on whether the defendant had knowingly and voluntarily waived his right to counsel. See 2019 WL 1087102, at *4-5. Likewise, the issue presented in *Jackson* was whether the defendant had knowingly and voluntarily waived his right to counsel. See 2015 WL 1310152, at *4-7. In both cases, the panel determined the record showed the district court had failed to conduct an adequate inquiry, thus warranting a reversal and remand. *Jones*, 2019 WL 1087102, at *5-6; *Jackson*, 2015 WL 1310152, at *7-8. Neither case abandons the Supreme Court's

9

direction that "[t]he authority to appoint standby counsel rest[s] *within the sound discretion* of the trial court." (Emphasis added.) *Matzke*, 236 Kan. at 837.

Here, Hubbard does not challenge the sufficiency of his three waivers of the right to counsel before trial. See *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016) (issues not briefed are deemed waived or abandoned); Kansas Supreme Court Rule 6.02 (a)(5) (2020 Kan. S. Ct. R. 34). And, as Hubbard admits in his brief, he had no right to standby counsel and the decision whether to appoint standby counsel is a discretionary one for the district court. Beyond citing cases in which the district court chose to allow standby counsel and summarizing his struggles with pro se representation, Hubbard has shown no abuse of discretion by the district court.

Hubbard also asserts that despite being informed of the disadvantages of self-representation, the district court still had an "obligation to ensure a fair proceeding." As support, he relies on *United States v. Sanchez Guerrero*, 546 F.3d 328, 333 (5th Cir. 2008), a decision from the Fifth Circuit Court of Appeals. In that case, the defendant argued that dismissing his chosen counsel was an abuse of discretion despite an apparent conflict of interest due to his attorney's simultaneous representation of a coconspirator and an adverse witness. The defendant's primary argument was that his waiver of the conflict precluded dismissal of counsel, but the Fifth Circuit panel explained that the waiver did not prevent the district court from "'ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.'" 546 U.S. at 333 (quoting *Wheat v. United States*, 486 U.S. 153, 160, 108 S. Ct. 1692, 100 L. Ed. 2d 140 [1988]).

Despite having little relevance to the circumstances of this case, Hubbard appears to rely on *Sanchez Guerrero* as a gateway to harmless error analysis based on the denial of his right to a fair trial. But the Kansas and United States Supreme Court have consistently held that the failure to honor a criminal defendant's Sixth Amendment right

10

to counsel or self-representation is subject to a structural error analysis. *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984); see *State v. Vann*, 280 Kan. 782, 793, 127 P.3d 307 (2006). So if Hubbard could show the denial of standby counsel was an abuse of discretion, a harmless error analysis would not be proper because this court would assume prejudice.

In sum, Hubbard fails to show the district court abused its discretion by denying his requests for standby counsel. Several appellate decisions confirm that while courts *may* appoint standby counsel, a pro se litigant has no right to hybrid representation. Hubbard's argument essentially comes down to his assertion that having standby counsel before trial would have been "beneficial" because of the difficulties he had obtaining witnesses and evidence for his defense, as well as his inability to prepare and file certain motions due to an illness. Simply put, Hubbard's repeated requests to represent himself at trial despite being advised of the disadvantages undercut his claim that the court abused its discretion by not appointing standby counsel.

*The district court did not err by failing to appoint counsel during trial.*

Hubbard also argues the district court deprived him of his right to counsel by not granting his request for representation after the trial had begun. He contends the court denied his motion without inquiry and forced him to proceed pro se, thus violating his right to counsel and warranting a new trial. The State responds that Hubbard's request was made in bad faith and that appointing counsel would have materially disrupted the trial.

The parties correctly note that the extent of a defendant's right to assistance of counsel and the related right to self-representation is a question of law over which appellate courts exercise unlimited review. *Bunyard*, 307 Kan. at 470.

11

Because the right to represent oneself conflicts with the right to counsel, "courts must indulge every reasonable presumption against waiver of the right to counsel[] and will not presume acquiescence in the loss of fundamental rights, *i.e.*, the right to counsel." *Vann*, 280 Kan. 782, Syl. ¶ 4. Thus, a criminal defendant must make a "knowing[] and intelligent[]" waiver of the right to counsel. *Faretta*, 422 U.S. at 835. The Kansas Supreme Court has suggested a three-step framework to determine whether a waiver is knowing and intelligent:

> "First, a court should advise the defendant of the right to counsel and to appointed counsel if indigent. Second, the defendant must possess the intelligence and capacity to appreciate the consequences of his or her decision. And third, the defendant must comprehend the charges and proceedings, punishments, and the facts necessary for a broad understanding of the case." *State v. Burden*, 311 Kan. 859, 863, 467 P.3d 495 (2020) (citing *State v. Buckland*, 245 Kan. 132, 138, 777 P.2d 745 [1989]).

Although our Supreme Court has not required the use of a specific checklist, it still approved the Kansas Criminal Law handbook's guidance on requests for self-representation to ensure that a defendant appreciates the consequences of waiving representation by counsel. Here, the district court repeatedly referred to the "*Lowe* factors" each time Hubbard moved to represent himself. In *Lowe*, a panel of this court quoted extensively from a section of the Barbara, Kansas Criminal Law Handbook, pp. 11-10, 11-11 (3d ed. 1992), which set forth the recommended procedure for a district court judge when a criminal defendant has asked to represent himself or herself. 18 Kan. App. 2d at 76-77. The Kansas Supreme Court has said this advice "is still sound today." *Bunyard*, 307 Kan. at 476 (citing Cateforis, Kansas Criminal Law p.11-9 [5th ed. 2016]).

Hubbard does not argue that the district court failed to fully advise him of his right to counsel or any consequences of waiving that right. Thus, he has abandoned any challenges that those waivers were insufficient, i.e., not knowing and intelligent. See *Williams*, 303 Kan. at 758; Kansas Supreme Court Rule 6.02 (a)(5). But even if Hubbard

12

had challenged those waivers in this appeal, the record establishes that the court thoroughly advised him of the dangers and disadvantages of pro se representation several times, yet Hubbard chose to act as his own counsel going into trial anyway.

Hubbard's appeal essentially only presents the question of whether a district court must appoint counsel *during trial* for a pro se defendant who makes that request after he or she has waived the right to counsel. Kansas law answers that question in the negative, contrary to Hubbard's argument on appeal.

As the district court recognized below, the Kansas Supreme Court has long held that "'[a]lthough a defendant has a right to self-representation, that right is unqualified *only if it is asserted before trial*. If this right is asserted after trial commences, a decision to grant or deny self-representation lies within the sound discretion of the trial judge.'" (Emphasis added.) *Plunkett*, 261 Kan. at 1028 (quoting *State v. Collins*, 257 Kan. 408, Syl. ¶ 2, 893 P.2d 217 [1995]). And as the court also noted, other panels of this court have treated a request for appointed counsel after trial has begun as a discretionary decision. See *Campbell*, 2018 WL 1352541, at *8 (quoting *State v. Rassel*, No. 107,336, 2013 WL 1688930, at *3 [Kan. App. 2013] [unpublished opinion]).

These cases demonstrate the possibilities for a district court when pro se defendants by their words or actions waive their right to self-representation. In *Plunkett*, the district court had granted the defendant's request for self-representation at a pretrial motions hearing but terminated it later in the hearing based on the defendant's conduct. The Kansas Supreme Court found no error in terminating the defendant's right to self-representation when the defendant had "maintained a surly, disrespectful attitude throughout the proceeding," then became belligerent and used profanity, refused to stand when addressing the court, and ultimately refused to answer the judge's questions. 261 Kan. at 1028-29.

13

In *Rassel*, the district court granted the defendant's motion to represent himself with standby counsel after he had entered a plea agreement but before being sentenced. About two weeks before the scheduled sentencing hearing, the defendant moved to dismiss the public defender as standby counsel and reappoint new counsel to represent him at sentencing, but the court denied the motions. On appeal, the panel concluded that "[a]lthough granting the request might have required another continuance so appointed counsel could become acquainted with the case, the delay would not have been especially disruptive and does not have the appearance of a ploy for some ulterior gain." 2013 WL 1688930, at *3.

Then, in *Campbell*, the district court granted the defendant's pretrial motions to represent himself but declined to appoint standby counsel. In the middle of trial, the court again denied a request for standby counsel, after which the defendant stated he wished to waive his right to self-representation and have counsel reappointed to represent him at trial. The court declined to do so, finding that appointing counsel would likely require a continuance and lead to a mistrial. Although the panel found that Campbell failed to raise the denial of the request for appointed counsel, thus abandoning the issue, it still concluded the request was untimely and "would have materially disrupted the judicial proceedings." 2018 WL 1352541, at *7-8 (citing *Rassel*, 2013 WL 1688390, at *3).

The circumstances of this case are nearly identical to *Campbell*, as the district court explicitly stated when ruling on Hubbard's request. The court found that his request was being made in bad faith and that appointing counsel would materially disrupt the proceedings and require a mistrial. In making those findings, the court also noted other "independent" supporting factors that it believed should be "considered when weighing a discretionary decision." The court acknowledged (1) the case's "history," which involved Hubbard's three previous requests for appointed counsel followed by separate requests for self-representation; (2) that Hubbard's reason for the request was not apparent because he had not shown a lack of composure or that he might lose control; (3) that Hubbard had

14

successfully cross-examined a witness and was able to admit evidence that was helpful to his case; and (4) that the court's previous advisement of the *Lowe* factors put Hubbard on notice that self-representation was "a bad idea."

Hubbard fails to show that the district court abused its discretion in making these findings. Just like in *Campbell*, the court recognized that new counsel would need adequate time to prepare for the trial, which would demand a mistrial. Even reaching out to find someone to represent Hubbard would itself have been a delay, given that the jury was actively waiting for the case to resume. Hubbard also points out that Hartman "stepped in to represent Hubbard," who ended up representing Hubbard up to the time of his appeal, apparently to suggest that Hartman would have done the same if contacted during the trial.

Yet nothing in the record shows that Hartman volunteered to represent Hubbard, just that the district court said it was appointing "the public defender's office" to represent Hubbard for sentencing. The letter of appointment identifies Mark Orr as the attorney appointed for sentencing. Moreover, the fact that the district court later reappointed Hartman for sentencing should not weigh significantly in Hubbard's favor, because the question for the court was whether appointing counsel *during trial* would have caused a significant delay. Given Hubbard's stated distrust of Hartman at trial, it was not unreasonable for the court to assume Hubbard would have objected to Hartman's reappointment.

As for the finding that Hubbard's request was being made in bad faith, the district court said it was relying on Hubbard's previous requests and dismissal of appointed counsel, during which he was repeatedly advised of the dangers of self-representation. The court thus considered his midtrial request to be "quintessential bad faith." The record supports such a conclusion.

15

- The record establishes that Hubbard was charged with the crimes and he had a public defender appointed in October 2017.

- In January 2018, Hubbard asked the court to remove his court-appointed counsel and allow him to appear pro se or with standby counsel. The court allowed him to appear pro se but denied the request for standby counsel. The court continued his preliminary hearing several times to allow Hubbard to prepare and the court appointed an investigator to assist him.

- Finally, in March 2018 the preliminary hearing took place and the court bound Hubbard over on the charges. Hubbard requested and was granted a court-appointed attorney to assist from that point forward.

- Hubbard then asked for and later dismissed counsel two more times, with the final pretrial request for counsel coming in January 2019—the Friday before the trial was set to begin. The trial court appointed Hartman and continued the trial several months.

- About a month before the rescheduled trial date in May 2019, the court granted Hubbard's final request to represent himself after fully advising him of his rights and finding Hubbard sufficiently understood the waiver of his right to counsel.

Simply put, a reasonable person could agree with the court's conclusion that Hubbard made his request for counsel during trial in bad faith based on the history of his case and the fact that his changes in representation status prolonged the case over 15 months from the initial preliminary hearing.

Hubbard also argues that he sought representation at trial to avoid becoming frustrated or appearing disorderly in front of the judge and jury, making it a "good faith request so that the trial proceeds in an orderly fashion." The State points out that the court noted Hubbard was not acting inappropriately before his request, and the record also shows that despite some objections during Hubbard's questioning of the State's witnesses, his conduct throughout the rest of the trial was proper. In other words, unlike the

defendant in *Plunkett*, Hubbard's conduct apparently never rose to a level that the court considered terminating his right to self-representation. See *Plunkett*, 261 Kan. at 1028-29. But at the same time, the fact that Hubbard sought to ensure the trial ran smoothly despite his pro se status should not count against him.

Ultimately, Hubbard must establish that the district court abused its discretion and we find he has failed to do so. Given the circumstances, which were that Hubbard had dismissed and then requested reappointment of counsel three times before eventually representing himself at trial, it was not unreasonable to conclude that Hubbard's request for counsel at trial was in bad faith. Moreover, the court correctly understood that appointing new counsel or reappointing his previous public defender would lead to a mistrial so that counsel could adequately prepare for trial. For these reasons, we affirm the district court's decision not to appoint counsel in the middle of trial.

Affirmed.