NOT DESIGNATED FOR PUBLICATION

No. 122,496

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CARL D. MARTIN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed June 11, 2021. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., MALONE and GARDNER, JJ.

PER CURIAM: Carl D. Martin was charged with tampering with an electronic monitoring device. Prior to trial, Martin sought to represent himself but wanted to have standby counsel available. The district court rejected Martin's request, stating he did not have the right to standby counsel. The jury then found Martin guilty. Martin now appeals, arguing his right to self-representation was violated. However, the record shows that when Martin was informed by the district court he was not entitled to standby counsel and could either represent himself or be represented by counsel, Martin chose to be

1

represented by counsel. Thus, Martin was not denied the right to self-representation, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Martin was fitted with a GPS monitoring device on his ankle in June 2019 as part of his postrelease supervision. Two days later, a strap tamper alert was sent to the monitoring company, indicating the circuit created by the fiber optics in the device's strap had been interrupted. The Wichita Police Department recovered the device from the house of Martin's mother, where Martin was living. Martin was not present at the house. The strap appeared to have been cut, exposing the fiber optic cable and causing the strap tamper alert.

The State charged Martin with tampering with an electronic monitoring device. The district court appointed counsel to represent Martin. In August 2019, Martin asked the district court to dismiss his counsel and appoint new counsel. After a hearing, the district court ruled Martin had failed to show justifiable dissatisfaction with his court appointed attorney and denied the motion.

In November 2019, prior to trial, Martin filed a second pro se motion to dismiss counsel, alleging ineffective assistance. In his motion, Martin stated: "I wish to be pro se and I am fully aware of the dangers of being pro se." Martin also filed a separate pro se motion for ineffective assistance of counsel.

The district court held a hearing on Martin's motions. At the hearing, the district court, seeking clarification, engaged in the following colloquy with Martin:

"[THE COURT:]  One clarification I needed to get, though, before we begin, because I need to know, there is a reference in here I wish to be pro se, which means

2

represent yourself, so I need to be sure that I know. You could do one of two things here. One, are you asking for a different lawyer, . . . or are you asking that you represent yourself?

"THE DEFENDANT: Myself. Myself, with a stand-by counsel.

"THE COURT: Well, I don't do stand-by counsel. Well, let me back up. First of all, let me make sure you understand what stand-by counsel means, because most people—before I went to law school, I misunderstood what it was.

"Most people think stand-by counsel means I get an attorney appointed to me, they kind of sit in the back of the courtroom and I go and I visit with them and I talk with them and they give me advice and recommendations and they give me help on how to proceed, but I'm at counsel table and I'm the one that's asking questions and making arguments and that sort of thing. That's not what that is.

"Stand-by counsel is just somebody that's in reserve, and if they're in stand-by status they don't advise the defendant, they don't represent them in any way, because they're—the person's representing themselves. What happens is if a person changes their mind and says hey, I realize now representing myself is a horrible idea, so now I want my stand-by counsel to now represent me, and then they step in and try to represent the person.

"So I need to make sure you understand that would be the role, okay. Are you still wanting to proceed pro se? The other thing—well, let me back up. The other thing is I typically don't appoint stand-by counsel. Most attorneys won't accept it, they consider it an ethical violation, because there's no way, if I was a practicing attorney out there and I was stand-by attorney, there's a whole bunch of work I needed to do on the case, I need to be talking with my client, for one, and coming up with a defense, with questions, with witnesses, you know, advising my client. And I—I'm stand-by, I don't—I can prepare to a degree, go out, interview witnesses and that sort of thing, but I can't fully prepare because I'm not really—I'm stand-by, I'm not representing.

3

"And so most attorneys in this town won't accept stand-by counsel, because—and I agree with them, I think there's not a way you can ethically step in at the last minute, from going stand-by to representing a person and do it competently, because you haven't been able to prepare.

"So really, what you need to do is you need to either go pro se or have an attorney, there's not really any in between. So are you wanting to go ahead and represent yourself or are you wanting a change in attorney or—

"THE DEFENDANT:  A different one.

"THE COURT:  What's that?

"THE DEFENDANT:  A different attorney.

"THE COURT:  A different attorney, okay."

After discussing the standard for appointing new counsel, the district court denied Martin's motion.

A jury convicted Martin of tampering with an electronic monitoring device, and the district court sentenced him to 46 months' imprisonment with 24 months' postrelease supervision.

Martin timely appeals.

DID THE DISTRICT COURT VIOLATE MARTIN'S RIGHT TO SELF-REPRESENTATION?

On appeal, Martin does not challenge the district court's refusal to appoint standby counsel. Thus, we consider this issue abandoned. *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016) (issues not raised deemed abandoned); see Kansas Supreme Court

4

Rule 6.02(a)(5) (2021 Kan. S. Ct. R. 35). Instead, Martin argues he was denied his right to self-representation because he clearly stated to the district court that he wanted to represent himself. Martin alleges the district court coaxed him away from his right to self-representation instead of ensuring Martin's assertion of his right was knowingly made. The State counters the district court provided Martin with accurate information about the appointment of standby counsel and, upon learning he would not have standby counsel, Martin decided to ask the district court to appoint him a new attorney.

The right to assistance of counsel and the related right to self-representation are legal questions subject to our de novo review. *State v. Bunyard*, 307 Kan. 463, 470, 410 P.3d 902 (2018).

The Sixth Amendment to the United States Constitution—made applicable to the states by the Fourteenth Amendment—guarantees a defendant in a state criminal trial the right to self-representation. 307 Kan. at 470; see *Faretta v. California*, 422 U.S. 806, 819, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). The right is not explicit in the Constitution's text, but the United States Supreme Court has implied that the right to act as one's own attorney comes from the right to counsel granted in the Sixth Amendment. *State v. Burden*, 311 Kan. 859, 863, 467 P.3d 495 (2020); see *Faretta*, 422 U.S. at 819-21.

"'"The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails."'

"'A criminal defendant who before trial clearly and unequivocally expresses a wish to proceed pro se has the right to self-representation after a knowing and intelligent waiver of the right to counsel. A knowing and intelligent waiver requires that the defendant be informed on the record of the dangers and disadvantages of self-representation. The choice is to be made "'with eyes open.'"' [Citations omitted.]" *Bunyard*, 307 Kan. at 470.

However, the right to counsel and right to self-representation cannot be asserted simultaneously. *State v. Ames*, 222 Kan. 88, 100, 563 P.2d 1034 (1977). As a result, the right to counsel and the right to self-representation present an "obvious potential tension." *Bunyard,* 307 Kan. at 470. Because of this tension, a court "'must indulge "every reasonable presumption against waiver" of the right to counsel.'" 307 Kan. at 470. The Kansas Supreme Court has suggested that a district court explain several aspects of self-representation to the defendant to ensure the waiver of counsel is knowing, including that the defendant will be held to the same standards of an attorney; the judge will not help the defendant; and having an attorney is advisable because many trial techniques, evidence rules, and defenses require specialized training and knowledge. But a district court may not determine a defendant's competence to waive the right to counsel based on the defendant's "'"technical legal knowledge."'" Whether a lawyer could better represent a defendant also is not for the court to decide. [Citations omitted.]" 307 Kan. at 470-71. The Kansas Supreme Court has never required a district court to use a checklist; "[i]nstead, courts weigh whether a defendant has knowingly and intelligently waived the right to counsel by examining the circumstances of each case." *Burden*, 311 Kan. at 864. A violation of the right to self-representation is structural error and not amenable to the harmless error analysis. *Bunyard*, 307 Kan. at 471.

Unlike the right to counsel, a defendant may waive the right to self-representation by failing to assert it. 307 Kan. at 470. While a defendant has the right to self-representation or to be represented by counsel, there is no "right to a hybrid representation." *State v. Holmes*, 278 Kan. 603, 620, 102 P.3d 406 (2004). Accordingly, the appointment of standby counsel lies within the sound discretion of the district court. *State v. Matzke*, 236 Kan. 833, 837, 696 P.2d 396 (1985).

Martin filed a pro se motion entitled: "Pro Se Motion Dismisal of Counsil [*sic*]." In his motion, Martin alleged his attorney was ineffective and stated: "I wish to be Pro Se and I am fully aware of the dangers of being pro se."

6

At the hearing on Martin's motion, the district court sought clarification from Martin, asking if he was seeking a different lawyer or to represent himself. Martin responded, "Myself. Myself, with a stand-by counsel." This answer prompted the district court to tell Martin, "Well, I don't do stand-by counsel." The district court then explained the purpose of standby counsel to ensure Martin understood the role of standby counsel. The district court explained it would not appoint standby counsel because most attorneys would not accept the appointment as they consider it an ethical violation to step into the middle of a trial with no time to prepare.

After informing Martin it would not appoint him standby counsel, the district court again asked Martin if he wanted to represent himself or if Martin was asking for a new attorney instead. Martin said he wanted a different attorney. After reviewing the standard for replacing an appointed attorney, the district court denied Martin's motion.

Before us, Martin claims he unequivocally asserted his right to self-representation and argues the district court should have ensured his waiver of counsel was knowingly made but, instead, wrongly coaxed him to continue to have representation. Martin asserts the district court thwarted his attempt to assert his constitutional right to self-representation by telling him standby counsel would not be appointed.

The record does not support Martin's assertions. The transcript of the hearing reveals the district court was not seeking to thwart Martin's assertion of his right to self-representation but was asking for clarification of Martin's request. After Martin asked to represent himself with standby counsel, the district court explained why it would not appoint standby counsel and once again asked Martin what he wanted. Contrary to Martin's argument, the district court was ensuring that if Martin did waive his right to counsel, then his waiver was knowing. After learning he could not have standby counsel, Martin still had the opportunity to request to represent himself, at which point the district

court would have likely gone through the process of warning Martin of the dangers of self-representation. Instead, Martin pivoted to asking for a new attorney.

The district court's explanation to Martin that he would not be allowed standby counsel is akin to warning him of the risks of proceeding pro se, as the Kansas Supreme Court recommends. See *Burden*, 311 Kan. at 864. Once finished with its explanation, the district court gave Martin the opportunity to make a choice between self-representation without standby counsel or requesting new counsel. Martin chose to request a new attorney. The district court did not deny Martin his constitutional right to self-representation.

Affirmed.